**Vivienne V. WALSH, Appellant,**

v.

**SCHERING–PLOUGH CORP.**

**No. 84–5415.**

United States Court of Appeals,
Third Circuit.

March 22, 1985.

Before WEIS, GARTH and SLOVITER, Circuit Judges.

## ORDER

Upon consideration of the matter of Mr. Martin's representation to the Clerk's Office in connection with his motion to file brief and appendix out of time, it is

ORDERED that this matter is referred to the merits panel. The merits panel's attention is also directed to the case of *Holloway v. Bolger,* No. 84–5309.

GARTH, Circuit Judge, dissents and files a dissenting opinion.

GARTH, Circuit Judge, dissenting from reference to merits panel:

By referring this proceeding to a panel on the merits the majority members of this motion panel have ruled against the need for fact finding. By doing so, the majority has either implicitly resolved the sharp factual dispute which has surfaced between Mr. Martin and Mr. Mariani, or has deemed that it should be effectively ignored. I think it inappropriate and unsound for us to decide the dispute of fact presented by these conflicting affidavits, and I cannot bring myself to ignore a dispute in fact as fundamental and basic, as the charged misrepresentations presented here.

It is charged here that misrepresentations were made by an attorney to his adversary and to the Court. In my opinion, when an attorney such as Mr. Mariani is impelled to make a serious charge against his colleague and looks to the court for redress and for corrective action, the court should not sweep these charges under the rug. I believe an attorney making such a charge is entitled to the same fact finding procedures and attention that we give to even the most trivial case where the material facts are in dispute.

By the same token, attorneys such as Mr. Martin, against whom charges are made, are entitled to vindication and exoneration in the event that the claims made against them are found to be without merit. The process adopted by the majority in its ruling accommodates none of these concerns. I therefore register my disappointment and disagreement with the majority's ruling even though this ruling stems from a matter collateral to the appeal itself.

## I.

This entire controversy had its origins in a suit brought by plaintiff-appellant Walsh against Schering-Plough Corp. Mr. Martin represented and still represents the plaintiff Walsh, and Mr. Mariani represented and still represents the defendant Schering-Plough. Walsh's complaint, filed in March of 1983, alleged employment discrimination in violation of Title VII.

On January 30, 1984, the magistrate to whom this case was assigned recommended that Walsh's case be dismissed because of her failure to comply with various discovery orders and with various pre-trial deadlines. Indeed the very pre-trial conference which gave rise to the magistrate's dismissal recommendation was not attended by Walsh's attorney, Mr. Martin. He did not appear, according to the addendum footnoted to the magistrate's report and recommendation, until about an hour after the conference had concluded.

The district court, however, did not accept the magistrate's recommendation. After a hearing, the district court required that certain discovery documents be produced by Walsh by a date certain. The district court also required other actions to be taken by Walsh (Mr. Martin), failing which the action would be dismissed with prejudice on the defendant's application.

On March 22, 1984, the district court dismissed Walsh's action with prejudice. In handwritten findings at the foot of its order, the district court wrote:

## FINDINGS

In spite of the substantial reasons by the United States Magistrate in support of her recommendation that plaintiff's complaint be dismissed for failure to comply with court orders and discovery obligations, I did not follow such recommendation, hoping that plaintiff, if given another opportunity, would comply with her obligations.

Plaintiff has failed to meet the deadlines which I imposed for responding to document requests and producing documents. I conclude that both plaintiff and her attorney are responsible for this default, that the repeated failure to comply has prejudiced defendant in the defense of this case, as defendant is unable to proceed with its obligation and with preparation for trial, that as recited in the magistrate's report and recommendation this is part of a history of plaintiff proceeding in a dilatory manner and that in view of plaintiff's failure to take advantage of the final opportunity to comply with the court's requirements lesser sanctions than dismissal will not suffice. I considered and imposed lesser sanctions but they were unavailing. Dismissal is, therefore, warranted.

Subsequent thereto, a motion to vacate the dismissal was made by Walsh. A hearing was held on August 23, 1984 at which time Mr. Martin initially represented that the documents which the district court had ordered him to turn over to the defendant on a day certain could not be delivered because there were no such documents. Thereafter, during the course of the hearing, it was revealed that, in answers to interrogatories, the documents had been identified but that they had not been given to Schering (Mariani) as the court had ordered. The relevant colloquy between the court and counsel follows:

THE COURT: Mr. Martin, let's cut this short, you listed specific documents in—in your answers to defendant Interrogatory 5, in your answer to defendant Interrogatory 20 and 21 and the final pre trial stipulation. They say they do not and never have had those documents.

Are you saying you gave them to them?

MR. MARTIN: No, I'm not.

THE COURT: Are you saying that you don't have them?

MR. MARTIN: I'm saying, Judge, that I believe that the tax information is information that Ms. Walsh has. She has subsequently turned it over to me upon

inquiry and in all fairness to Mr. Mariani, he hasn't received them, but they are there.

THE COURT: If he [Mr. Mariani] hasn't received them, your complaint is going to be dismissed because you said in this response that there were no further documents to turn over.

MR. MARTIN: Well, Judge, in all candor, no, the documents, I have them in my possession but they weren't turned over to Mr. Mariani.

THE COURT: Then the case is out. You did not comply with that order.

An appeal followed. The circumstances that transpired from that appeal have given rise to the instant motion made by Mr. Mariani, and the affidavits supporting and opposing this motion that have fueled this controversy. In sum, that motion has resulted in the conflicts in the affidavits between Mr. Mariani and Mr. Martin—a conflict which I believe must be resolved by fact finding.

## II.

According to Mr. Mariani's affidavit, on June 15, 1984 Walsh filed her notice of appeal from the order dismissing her complaint.

On September 4, 1984, Walsh was instructed by the clerk of this court to serve and file her brief and appendix on or before October 15, 1984. Walsh's brief was not filed on that date and by a subsequent letter from this court, Walsh was advised that her appeal would be dismissed unless a brief and appendix together with a motion to file out of time were received by this court by November 8, 1984.

Thereafter, an extension of time was granted by the clerk of this court. That extension established a new deadline of November 15, 1984 for the filing of Walsh's brief and appendix. No filing was made by Walsh on the due date, but a second motion for extension of time was filed on November 15. Apparently Walsh's brief and appendix was not transmitted to the court until November 19, 1984. In his

affidavit supporting his motion to file the Walsh brief and appendix out of time, Mr. Martin claimed that he delayed filing the brief because of a potential settlement offer which he had received from Mr. Mariani. Paragraph 2 of Mr. Martin's affidavit reads:

2. I was aware that the following brief was due on November 15, 1984. *However, prior to this date I received a potential settlement offer from my adversary in this matter.* Upon receipt of this information, I attempted to contact my client immediately and have continued to do so for several days, but to no avail. I have sent a mailgram to this effect a copy of which is attached. (Emphasis added)

Mr. Mariani in effect sought to oppose Walsh's second motion for leave to file out of time by moving to dismiss her appeal. He asserted in his affidavit that the reason stated by Mr. Martin for failing to meet the November 15, 1984 deadline was false. In pertinent part, Mr. Mariani's affidavit states:

14. The sole support for appellant's November 15, 1984 Motion to File Out of Time is the Certification of Arthur N. Martin, Jr. *In his certification, Mr. Martin attempts to excuse his failure to meet the November 15, 1984 deadline by stating that prior to that date he '... received a potential settlement offer from my adversary....' This is absolutely false.* (Emphasis added)

15. On November 12, 1984, three days before the extended filing deadline of appellant's Brief and Appendix, I received a telephone call from Mr. Martin wherein he asked whether Schering would consider settling this matter. I explained to Mr. Martin, as I had on several other occasions during the past year when he had asked the same question, that if plaintiff presented a settlement proposal I would pass it along to Schering-Plough for consideration. Plaintiff had no such proposal to present. Mr. Martin advised me that he would contact his client to see if he could develop a proposal just as he had done on

several other occasions when the subject had been discussed.

16. *Mr. Martin's statement that I presented a settlement proposal to him in our telephone conversation is absolutely false.* To the extent that we generally discussed the subject of possible settlement on November 12th, this is the same conversation which Mr. Martin and I had on several prior occasions during the last year. (Emphasis added)

17. I was somewhat puzzled by Mr. Martin's telephone call on November 12th since we had virtually the identical conversation on several prior occasions and Mr. Martin never responded with any proposal.

18. In retrospect, it is plain to me that Mr. Martin's phone call on November 12th was made simply to create an excuse for failing to meet the second extended deadline for filing appellant's Brief and Appendix. In fact, when Mr. Martin delivered appellant's papers to me on November 20th, he mentioned in passing that appellant "... did not want to settle."

Mariani affidavit November 27, 1984.

It was at this point that the motion panel ordered Mr. Martin to "... file a detailed response under oath to Mr. Mariani's affidavit." In addition, our order provided that "Mr. Martin's affidavit shall respond to the allegation that his motion of November 15, 1984 misrepresented facts to the court to excuse his compliance with the order to file appellant's brief by November 15, 1984." (Order, January 2, 1985.)

On January 8, 1985, the following affidavit was filed by Mr. Martin:

1. I am making this Affidavit per the Court's Order requiring me to respond to the allegations in an Affidavit of Richard C. Mariani, Esq. dated November 27, 1984, at which time Mr. Mariani indicated that he never made a settlement offer to me as it pertains to the matter presently venued before this body.

2. On or about November 12, 1984 I spoke to Mr. Mariani about the possibili-

ty of resolving this matter and I informed him that my client was attempting to find other employment but, due to this litigation she was unable to do so because she could not receive adequate references from the defendant, Schering-Plough Corp.

3. I asked Mr. Mariani if the matter could be settled, could a nondescript reference be forthcoming as well as the possibility of some monies.

4. Mr. Mariani indicated that he thought that at least the cost of answering the plaintiff's moving papers and appeal would be something the defendant would consider and that the sum would be approximately $5,000.00 however, I would have to let him know in short order and, I told him I would endeavor to do so.

5. If the Court will take note I have attached a copy of a Mailgram sent to the plaintiff dated November 15, 1984 (see Exhibit A), at which time I informed her of a possible offer and for her to contact me immediately. I have also attached a copy of an itemized telephone bill showing the calls from the plaintiff dated both November 17, 1984 and November 19, 1984, which I will indicate to the Court were (1) a rejection of the settlement offer and (2) a quiery [sic] as to the status of the appeal.

6. I further communicated to Mr. Mariani on November 19, 1984 that the plaintiff was not willing to settle the matter and that the papers due in this Court were delivered in Philadelphia on November 19, 1984 and, if in fact it was my intention to buy time, as inferred by Mr. Mariani's Affidavit, I would not have been able to have the papers filed on that date.

7. Once I was informed, on November 17, 1984, that the proposed settlement offer was rejected I subsequently filed the papers on the same day the motion was made to file the papers out of time.

8. I dare say, if there was truly no settlement possibility I would have never sent a mailgram committing myself to that proposition in that if Ms. Walsh had accepted there would have been nothing to offer.

On January 22, 1985, so as not to prejudice Walsh's appeal, we denied Mr. Mariani's motion to dismiss the appeal. In the same order, however, we directed Mr. Mariani to file a response to the January 8, 1985 affidavit.

Mr. Mariani responded on February 1, 1985 with an affidavit, the relevant paragraphs of which I reproduce below:

5. On November 12, 1984, three days before the extended filing deadline of appellant's Brief and Appendix, I received a telephone call from Mr. Martin wherein he asked whether Schering would consider settling this matter. I explained to Mr. Martin, as I had on several other occasions during the past year when he had asked the same question, that if plaintiff presented a settlement proposal I would pass it along to Schering-Plough for consideration. Plaintiff had no such proposal to present. Mr. Martin stated [sic] me that he would contact his client to see if he could develop a proposal and he would get back to me. This is the same position he had taken in previous discussions regarding the subject of possible settlement. In this regard, I advised him, as I had on the previous occasions when we discussed the issue of settlement, that he would be wasting his time if the settlement proposal he would come back with was any more than a nominal amount. I also emphasized clearly that I had not been authorized by Schering to settle for any amount of money and that there was no guarantee that Schering would accept a settlement proposal by Ms. Walsh even if it was an amount which she considered to be "nominal".

6. It is true that in our conversation on November 12th Mr. Martin and I did discuss the anticipated cost to Schering of preparing its appellate brief as Mr. Martin indicates in his affidavit. However, I did not represent to Mr. Martin

that Schering would settle the case for an amount equivalent to its appeal costs.

7. *At no time during our conversation did I make any offer in behalf of Schering, directly or indirectly, to settle the case for any amount of money.* More than once during my conversation I told Mr. Martin that plaintiff would have to make an offer to Schering and that Schering might not settle even if he came back to me with an offer from Ms. Walsh to settle for a "nominal" amount. (Emphasis added)

8. My refusal to make a settlement offer to plaintiff and my statement to Mr. Martin that if plaintiff was interested in settling she would have to make an offer to defendant was consistent with the position taken by me from the outset of the case and expressed in several conversations with plaintiff's counsel regarding possible settlement. See, for example, my letter to Schering's counsel dated July 22, 1983, annexed hereto as Exhibit A reciting the substance of a discussion on July 15, 1983 regarding possible settlement. My discussion of settlement with Mr. Martin on November 12th was essentially the same discussion which Mr. Martin and I had on several prior occasions going back to the Preliminary Pretrial Status Conference on July 15, 1983 referred to in Exhibit A.

9. Following our conversation on November 12, 1984 the next contact I had with Mr. Martin regarding this matter was on November 20, 1984 when Mr. Martin appeared at my office to deliver appellant's brief, he advised me that appellant "... did not want to settle."

### III.

It is at this juncture that I part company with my brother Weis and sister Sloviter who constitute the majority of this motion panel. They have no interest in pursuing this matter further. Instead, they have referred this matter to the merits panel which will ultimately decide Walsh's appeal, thereby bypassing and foregoing an inquiry by a fact finder into the truth of these conflicting assertions.

In doing so, the the majority is apparently of the opinion that all that is involved here is a late filing of a brief and appendix—a filing which has now been accomplished and which we have not disturbed. The majority also apparently feels that we have more important things to do than to monitor alleged representations or misconduct of counsel and that we ought not to expend our valuable time, efforts and resources on an issue concerned with the truth or falsity of attorneys' statements made under oath, but which are collateral to the appeal. Moreover, contrary to my reaction, the majority apparently feels that the affidavits do not present a clear dispute of fact but that their conflicting assertions may be reconciled. If these indeed are the reasons behind my colleagues' reluctance to pursue this dispute through fact-finding, I find myself in strong disagreement.

First, I cannot reconcile the Martin affidavits with the Mariani affidavits. In my opinion, one or the other of the two affiants is not being candid and truthful. Either there was a potential settlement offer which Martin received from Mariani prior to November 15, 1984 (Martin's affidavit November 15, 1984)—or there was not. (Mariani's affidavit November 27, 1984—"Mr. Martin's statement that I presented a settlement proposal to him in our telephone conversation [of November 12, 1984] is absolutely false.").

Either Martin is correct when he states that "Mr. Mariani [in the telephone conversation of November 12, 1984] indicated that he thought that at least the cost of answering the plaintiff's moving papers and appeal would be something the defendant would consider and that the sum would be approximately $5,000.00 ..." (Martin affidavit January 8, 1985)—or Mariani is correct when he states that Martin called him on November 12, 1984 to ask whether Schering would consider settling; that Martin had no proposal to present; that Schering had not authorized any settlement; that appellate costs to Schering

were discussed; but that no representation was made that Schering would settle for its appeal costs and no offer was made by Schering to settle for any amount of money. (Mariani affidavit February 1, 1985). Martin and Mariani cannot both be right.

Accordingly, it seems to me that even though the issue out of which this controversy has arisen is altogether tangential to the main issue on appeal, it is not an issue which we should, or can, ignore. It involves not only attorneys' representations to each other but attorneys' representations to the court. It also involves the court's role and function when alleged misrepresentations, and thus misconduct, are brought to the court's direct attention.

I cannot think of anything more vital to the conduct of judicial proceedings or to the relationships between attorney and attorney, and attorneys and the court, upon which we set such high values, than to put such issues to rest. In doing so, we would either vindicate Mr. Martin with respect to the charges brought against him or, if the charges are borne out, we would properly expose such conduct to judicial light and impose an appropriate sanction.

Undoubtedly, it was just such considerations that gave rise to the recent amendment to Fed.R.Civ.P. 11. That Rule, promulgated to keep attorneys "honest" in their pleading practice, now authorizes sanctions to be imposed when an attorney violates his certificate that good grounds support his pleading and that the pleading is not interposed for delay.[1] Moreover, our own Fed.R.App.P. 46(c) provides for action being taken by us in the event that an attorney who practices before us exhibits conduct unbecoming a member of the bar or fails to comply with any rule of the court.[2]

It is evident to me that unfortunately there are some counsel who abuse the judicial process and by doing so make our task and the tasks of our colleagues far more difficult. Historically, attorneys have been reluctant to "blow the whistle" on their colleagues or to seek sanctions against their opponents. Perhaps as Professor Miller notes in a recent article written in a discovery context,[3] they are mindful of a variation on the golden rule "Do not seek sanctions against what is done to you today, for it may be what you will try on your opponent tomorrow."

1. Federal Rule of Civil Procedure 11 provides:

Every pleading, motion, and other paper of a party represented by an attorney shall be signed by at least one attorney of record in his individual name, whose address shall be stated. A party who is not represented by an attorney shall sign his pleading, motion or other paper and state his address. Except when otherwise specifically provided by rule or statute, pleadings need not be verified or accompanied by affidavit. The rule in equity that the averments of an answer under oath must be overcome by the testimony of two witnesses or of one witness sustained by corroborating circumstances is abolished. The signature of an attorney or party constitutes a certificate by him that he has read the pleading, motion, or other paper; that to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation. If a pleading, motion, or other paper is not signed, it shall be stricken unless it is signed promptly after the omission is called to the attention of the pleader or movant. If a pleading, motion, or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion, or other paper, including a reasonable attorney's fee.

2. Federal Rule of Appellate Procedure 46(c) provides:

(c) **Disciplinary Power of the Court over Attorneys.** A court of appeals may, after reasonable notice and an opportunity to show cause to the contrary, and after hearing, if requested, take any appropriate disciplinary action against any attorney who practices before it for conduct unbecoming a member of the bar or for failure to comply with these rules or any rule of the court.

3. Miller, The Adversary System: Dinosaur or Phoenix, 69 Minn.L.Rev. 25 (1984).

Whatever the reason, however, when an attorney finally brings to our attention what he considers to be a false statement made in an affidavit by his adversary, I do not understand how a judge or a panel of judges who are called upon to resolve the dispute, can fail to do so. "Given the frustration felt by many litigators about the atmosphere of lawlessness that often bogs down actions through hyperactivity, missed deadlines and repeated rescheduling, the judge is seen as an ally against a common enemy—the abusive opponent."[4] Even more so, we should be seen as upholders of professional integrity when we are confronted with the charge that an attorney has misrepresented facts to another lawyer and to the court. If we are indeed joined with the responsible bar in such a cause, then it appears to me that we are shirking our duty if we permit charges to remain unproved or disproved, and if we do not provide a judicial forum to resolve the challenge presented.

If current judicial philosophy is aimed at encouraging courts to detect and punish violations of Rule 11 certifications,[5] then *a fortiorari* we should not stand aside when a charge such as the instant one involving misrepresentations under oath, is presented. At the very least, we should insist upon a clearing of the air. To achieve that end, it is obvious that a hearing must be had. Indeed, such hearings are invariably accorded by the courts in contexts where conflicts of fact have arisen. In the present context, I see no reason to forego our time-tested and traditional means for determining through a hearing, what the true fact is.

If these conflicting affidavits had been filed in a summary judgment context, there is little doubt in my mind but that the members of the majority would undoubtedly have denied summary judgment and required that the truth be ascertained through a fact finding process. Why the present situation should be different, I cannot imagine. Indeed, where the integrity and honesty of the bar is at issue, I believe the need for such fact finding is imperative.[6]

If we take no steps to resolve the issue which these affidavits have now presented to us, we run the risk not only of losing the respect of the bar, but of damaging the professional standards that lawyers look to us to uphold. Every member of the bar has had his character and fitness tested and reviewed before obtaining a license to practice. We, together, with other courts, are charged with maintaining at least that level of honesty and professionalism in the conduct of those who, once having obtained the right to practice, continue to exercise that right before us.

I liken our lack of consideration to matters such as these as being similar to pulling one thread from a tapestry of intricate composition. Such an act perhaps does not destroy the form and design of the tapestry of and by itself, but as additional threads are withdrawn—the tapestry must eventually lose its form, its lines and its essential design. So too, as each instance of charged professional misconduct is ignored by us or deemed unworthy of our attention, our professional tapestry will imperceptibly, but surely, lose its form, its structure and its shape.

Thus, in my opinion it is no answer to characterize the issue before us as one not worth our consideration. If we do not require strict adherence to principles which mandate candor and truthfulness, and if we refuse to decide and enforce claimed viola-

4. *Id.* at 21.

5. C. Wright & A. Miller, Federal Practice and Procedures, Civil, § 1334, 1983 Supp. at 131.

6. Former Canon 22, 62 ABA Rep. at 1112–1113 provides:

The conduct of the lawyer before the Court and with other lawyers should be characterized by candor and fairness. * * * It is un-professional and dishonorable to deal other than candidly with the facts * * * in drawing affidavits and other documents and in the presentation of causes.

Canon 22 has been superseded by DR 1–102(a)(4) which provides that a lawyer shall not engage in conduct involving dishonesty, fraud, deceit, or misrepresentation.

tions of those fundamental precepts, we will have only ourselves to blame if intolerable and proscribed practices of the bar become the rule rather than the exception.

## IV.

I would refer these affidavits to a magistrate, judge or other fact finder for the taking of evidence and testimony leading to a report establishing findings of fact. Because the majority has failed to take this action, I dissent from the majority's order.