ITEL CONTAINERS INTERNATIONAL
CORPORATION, Plaintiff,

v.

PUERTO RICO MARINE
MANAGEMENT, INC.,
Defendant.

Civ. No. 83–2673L.

United States District Court,
D. New Jersey.

Oct. 29, 1985.

Kornstein Veisz & Wexler, New York City, Lowenstein, Sandler, Brochin, Kohl, Fisher, Boylan & Meanor by Robert D. Chesler, Roseland, N.J., for plaintiff.

Short, Klein & Karas, P.C., Washington, D.C., Meyner & Landis by Edwin C. Landis, Jr. and William J. Fiore, Newark, N.J., for defendant.

McCarter & English by John L. McGoldrick, Newark, N.J., for Short, Klein & Karas, P.C.

## OPINION

LACEY, District Judge.

### INTRODUCTION

The underlying action having been terminated, this opinion addresses the issue of what sanctions, if any, should be imposed upon the defendant corporation and its counsel, the Washington, D.C. law firm which was, at the outset of the lawsuit, admitted *pro hac vice*, and its local New Jersey counsel.

The regrettable necessity for considering sanctions has arisen from the undeniable abuse of the judicial process by the defendant and its counsel. Aware from the time they received the complaint that the plaintiff had mistakenly invoked diversity jurisdiction, 28 U.S.C. § 1332, they wilfully elected to pursue a litigation strategy of actively concealing from the plaintiff and the court as long as possible that this court was without power to hear the matter. To implement this strategy, they not only calculatingly avoided answering the complaint's assertion of diversity jurisdiction; omitting the Fed.R.Civ.P. 12(b)(1) affirmative defense, they actually asserted a counterclaim against the plaintiff. They also made a motion, which was unsuccessful, to dismiss the complaint on a basis wholly unrelated to a lack of diversity of citizenship. They responded on the merits to plaintiff's motions for summary judgment (even to the point of moving for reargument on the merits, when the court granted plaintiff partial summary judgment in striking one of the defendant's affirmative defenses). Finally, they deliberately drafted an unresponsive interrogatory answer to conceal the fact that there was no diversity because the defendant corporation was, like the plaintiff, a Delaware corporation.

Defense counsel have admitted under oath that their strategy from the outset of this suit was to withhold from their adversary and the court for as long as possible the knowledge that subject matter jurisdiction was lacking. Their tendered justification was that, because they thought that plaintiff's claims were overreaching and baseless, having already been resolved by a previous settlement agreement, they were acting properly in protracting the lawsuit so that the statute of limitations would have barred at least some of these claims when this court, having finally discovered that there was no federal jurisdiction over the suit, dismissed it. Thus, not until almost two years after commencement of the action, and only after a pretrial conference date had been set and a required pretrial memorandum had to be prepared, did the defendant and its counsel decide to reveal that this court lacked the power to do that which until then they had silently required it, or permitted it, to do: review briefs, research the issues, listen to oral arguments, decide motions and direct pretrial proceedings (including setting of dates for pretrial conference and trial).

### THE PROCEEDINGS

The plaintiff (Itel) on July 20, 1983, sued the defendant (PRMMI) for breach of contract, asserting it had failed to pay for damage done to containers leased to it by Itel. Diversity jurisdiction was asserted under 28 U.S.C. § 1332, it being alleged that the plaintiff was a Delaware corporation and the defendant a Puerto Rico corporation with offices in Elizabeth, New Jersey. Complaint, ¶¶ 1, 2.

Before answering, and notwithstanding that they knew this court had no subject matter jurisdiction, PRMMI's counsel moved on September 16, 1983, to dismiss

for plaintiff's failure to comply with the provisions of N.J.S.A. 14A:13–11 (requiring a plaintiff to have a certificate of authority to do business in New Jersey). This motion was denied following oral argument.

Thereafter PRMMI filed its answer on November 28, 1983. It responded to paragraph 2 of the complaint (which alleged defendant's citizenship) as follows:

Denies the allegations of paragraph 2 of the Complaint, except admits that PRMMI maintains an office in Elizabeth, New Jersey.

Answer, ¶ 2.

The answer responded to the complaint's assertion in paragraph 4 that this court had diversity jurisdiction over this case as follows:

The averments of paragraph 4 of the Complaint are statements of the jurisdictional and venue statutes on which the Complaint is based, and defendant need not respond thereto.

*Id.*, ¶ 4. That this was so phrased was not an accident. Counsel hoped thereby to avoid highlighting the absence of jurisdiction.

PRMMI also pleaded in its answer several affirmative defenses and a counterclaim.[1] As has been noted, lack of subject matter jurisdiction was *not* pleaded.

Plaintiff's first set of interrogatories, served on defendant on August 10, 1983, aimed at the jurisdictional issue among other things, included request no. 1, which drew the response set forth immediately after it, as follows, in answers served on December 23, 1983:

1. Set forth in detail the nature of the following entities (e.g., corporate structure and *place of incorporation,* status

as government agency, etc.): (emphasis supplied)

(a) Defendant;

Defendant, Puerto Rico Marine Management, Inc. (PRMMI), is a stock company which carries out vessel operations, terminal operations and other functions for the Puerto Rico Maritime Shipping Authority (PRMSA). PRMMI is a wholly-owned subsidiary of PRMSA.

(b) The Puerto Rico Marine Shipping Authority (PRMSA);

PRMSA is a non-stock public corporation, an instrumentality of the Government of the Commonwealth of Puerto Rico, created pursuant to the Law of the 10th of June, 1974, no. 62, 23 L.P.R.A. § 3501 *et seq.* (1978). PRMSA's purpose is to provide ocean carrier service primarily between certain points in mainland United States and the Commonwealth of Puerto Rico. Ocean trade between the East Coast and Gulf ports of the United States accounts for over 70 percent of Puerto Rico's total external trade. PRMSA's ocean vessel operations are conducted between San Juan and the following United States ports: Elizabeth, New Jersey; Baltimore, Maryland; Charleston, South Carolina; Jacksonville, Florida; Miami, Florida; and New Orleans, Louisiana. PRMSA also provides ocean vessel services between San Juan, on the one hand, and the U.S. Virgin Islands, the Dominican Republic, Haiti and Trinidad, on the other.

(c) Navieras de Puerto Rico ("Navieras").

"Navieras de Puerto Rico" or "Navieras" are abbreviations for the full Spanish-language translation of "Autoridad de las Navieras de Puerto Rico." Thus,

---

1. The assertion of the counterclaim was particularly pernicious. If deemed a compulsory counterclaim, it implied that, through ancillary jurisdiction, there was subject matter jurisdiction over the main claim. *Baker v. Gold Seal Liquors, Inc.,* 417 U.S. 467, 469 n. 1 (1974); 6 Wright & Miller, Federal Practice and Procedure: Civil § 1414 (1971). If permissive, it implied there was independent jurisdiction over it. *Aldens, Inc. v. Packel,* 524 F.2d 38, 52 (3d Cir. 1975), *cert. denied,* 425 U.S. 943, 96 S.Ct. 1684,

48 L.Ed.2d 187 (1976); 6 Wright & Miller, Federal Practice and Procedure: Civil § 1422 (1971). In either case, interposition of the counterclaim was totally inconsistent with what defendant knew: that the court lacked subject matter jurisdiction. The assertion of the counterclaim was designed to mask, and advance, the defendant's litigation strategy of concealment of lack of jurisdiction over plaintiff's claims.

Navieras and PRMSA are one in [*sic*] the same entity.

Counsel consciously and intentionally did not answer the "place of incorporation" portion of the request because they were continuing their efforts to conceal as long as possible the absence of subject matter jurisdiction.

After conducting further discovery, plaintiff filed a motion for summary judgment. After extensive briefing and oral argument, the court, unaware that it was without subject matter jurisdiction, entered an order on November 8, 1984, granting plaintiff partial summary judgment by dismissing PRMMI's affirmative defense that the claims in the suit had already been settled under a previous agreement between the parties.[2] PRMMI persisted in its design of concealment by then filing a motion for reconsideration of this ruling; and plaintiff, having conducted further depositions, renewed so much of its motion for summary judgment as had earlier not been granted. Again, there was extensive briefing, with references to discovery material and lengthy oral argument, with defendant's counsel, to further its litigation strategy, once again intentionally concealing from the court that it was without jurisdiction over the matter. Both motions were denied by an order entered on March 7, 1985.

Meantime, of course, discovery continued. After another deposition, plaintiff renewed its motion for summary judgment at a time shortly before the final pretrial conference was to take place. It was then that defendant, almost two years after commencement of suit, moved to dismiss the case for lack of diversity jurisdiction, presenting evidence that PRMMI was a Delaware corporation. Plaintiff, in response, cross-moved for sanctions against PRMMI for its delayed disclosure of the jurisdictional defect and other alleged misconduct.

A hearing on these motions was held on April 29, 1985. The court granted the motion to dismiss for lack of subject matter jurisdiction and held an evidentiary hearing on defense counsel's concealment of the jurisdictional defect.

David Short, who had appeared for defendants throughout, testified that he and other members of his Washington, D.C. law firm (including Ms. Klein, the partner in charge and to whom Mr. Short, an associate, reported) knew from the commencement of the lawsuit that, because the defendant was a Delaware corporation, this court lacked subject matter jurisdiction. (Tr. 11–12) Mr. Short and his firm had concealed the lack of subject matter jurisdiction until now "in the hope that the statute of limitations would run" on plaintiff's claims, (Tr. 13) thus barring them when this court ultimately was required to dismiss the case. Counsel intended to raise the issue "sometime prior to trial" (Tr. 14) and were acting in order to represent the interests of his client. Defendant's local counsel also knew of the lack of diversity jurisdiction from the start. (Tr. 16)

With respect to the answer to Interrogatory 1 referred to above, Mr. Short, after conceding he knew it was called for, contended disingenuously that he omitted in his response defendant's place of incorporation because he believed that "in response to a general interrogatory like that it was appropriate not to volunteer information not specifically asked for." (Tr. 21) Of course the interrogatory was not "general" and the specific information *was* "asked for." The following colloquy between Mr. Short and the court is revealing:

THE COURT: And you saw this question, "Set forth in detail the nature of the following entities, (e.g., corporate structure and place of incorporation, status as Government agency, et cetera)."

Now, if you had answered this fully and responded to the request for place of

---

**2.** Presumably, in the state court action that has now been filed, the defendant will continue to assert this affirmative defense and will contend that this court acted without jurisdiction in dismissing it. In resisting on the merits this and others of plaintiff's motions, the defendant was causing the court to engage in a meaningless exercise in which the defendant could not lose.

incorporation, you would have stated, among other things, Delaware, wouldn't you?

THE WITNESS: Yes.

THE COURT: And that would have disclosed, flatly, clearly that there was no diversity of citizenship would there [*sic*]?

THE WITNESS: Yes.

.    .    .    .    .

THE COURT: All right. Did you have any discussion with [local counsel] about the question that we—you and I have been addressing here?

THE WITNESS: Yes.

THE COURT: And what was that discussion?

THE WITNESS: Well, we both, we discussed how that question had to be answered and agreed that the proposed answer was a complete answer to what we both read as a very general and non-specific interrogatory.

THE COURT: And did you discuss with him, among other things, why you hoped to avoid answering place of incorporation?

THE WITNESS: Yes.

THE COURT: And what was that discussion?

THE WITNESS: Well, I don't remember specifically but he was aware.

THE COURT: No, just give me the substance of the discussion.

THE WITNESS: Well, he was aware of the fact that the defendant was incorporated in Delaware and accordingly we did not want that information to—

THE COURT: To be disclosed at that time?

THE WITNESS: Yes.

THE COURT: Because that would have been inconsistent with the policy that you were pursuing in the case?

THE WITNESS: Yes.

Tr. 23–24, 25–26.

Mr. Short's attempt to excuse or explain his carefully calculated omission by labeling the interrogatory "general" and "non-specific" is unacceptable. He saw what was called for and decided not to give it.

Examined further by Ms. Klein, Mr. Short seemingly felt that his deception was justified because, the claims at issue here having been included in a previous settlement agreement between the parties, this suit was brought in bad faith. (Tr. 33–42) It is noted it had earlier been decided that the previous settlement had not been dispositive of the claims before me. *See* p. 99, *supra*. Mr. Short went on to state that he had researched the issue of raising a defense of lack of jurisdiction and concluded that defendant had no duty to raise the defense in the answer.[3] (Tr. 42–45) While he did make a motion to dismiss in late 1983 because plaintiff was not licensed to do business in the state,[4] he believed that the court had not spent substantial time on the case until plaintiff filed what Mr. Short felt were its frivolous motions for summary judgment. (Tr. 48–52)

The hearing concluded with the court addressing plaintiff's motions for sanctions and stating orally that it found "defendant's conduct in this matter, and more particularly the conduct of counsel for the defendant, to represent an egregious breach of counsel's obligation to the court" (Tr. 67) and that defendant and its counsel had adopted a "strategy to conceal the lack of subject matter jurisdiction from the plaintiff and from the court, as long as possible." (Tr. 68) The court referred to defendant's failure to respond in its answer to the interrogatory to which reference has been made. With respect to the latter, the court stated:

> Mr. Short, preparing the answer to this interrogatory, deliberately decided to "duck" the state of incorporation aspect

---

**3.** Involved here is more than a simple failure to assert a Rule 12(b)(1) defense in the answer. It is the active concealment from the court of this jurisdictional defect that is pertinent.

**4.** Mr. Short did not explain how he or Ms. Klein or other counsel found this motion compatible with this court's lack of power to decide it, a circumstance only they knew.

of the question, accomplishing this by an unresponsive answer. Bluntly put, the answer was intentionally deceptive and false in that it was deliberately drawn to further the strategy hereinabove referred to.

(Tr. 70)

The court further noted the great amount of time it had spent on the case and that Mr. Short had appeared before the court and had argued the merits of the matter in opposing plaintiff's motions, as well as in making defendant's own motion to dismiss, leading the court to function as if it had jurisdiction while knowing that the court lacked jurisdiction. The court concluded by stating that "one's duty to one's client [does not] justif[y] placing the burden on this court the defendant did." (Tr. 72)

The court requested briefing; and further oral argument on the matter was held on June 28, 1985.

In addition to the foregoing, defendant's counsel attended three status conferences before Magistrate G. Donald Haneke on February 1, April 19 and August 27, 1984. On April 19, a Scheduling Order was entered following that status conference. The court's records also reveal that plaintiff's first set of interrogatories, which were served on August 10, 1983, were not answered by the defendant until December 23, 1983, some 4½ months later.[5] Even then, the defendant had first filed a motion on December 2, 1983, to extend the time for it to answer these interrogatories. In support of the motion, defendant through local counsel noted that it had applied for a stay of discovery when it had earlier moved to dismiss the complaint and explicated its difficulty in obtaining information to answer the questions put. The fact is that the motion for a stay was not granted, and defendant's delay in answering the interrogatories was inexcusable. It appears from Magistrate Haneke's records that,

when the plaintiff objected to the motion to extend the time to answer the interrogatories, defendant served them, as indicated, on December 23, 1983. Summarizing the proceedings before the magistrate, defendant's counsel concealed from the magistrate, as they had from the undersigned, that this court was without subject matter jurisdiction over the case.

## DISCUSSION

Effective August 1, 1983, certain changes in the Federal Rules of Civil Procedure (*see* Rules 7, 11, 16, 26(g)) underscore the necessity for complying with not only the rules but with the imperatives of civility in litigation. The 1983 amendments were a response to the voices of bench and bar that litigation, in some quarters, at least, was becoming more like an alley brawl than a search for the truth by respected and respecting professional advocates. The adversary system commands vigorous and zealous representation of one's client. The "battle" should be fought hard—but fought fairly. Vigorous advocacy is not inconsistent with decent behavior toward one's adversary and respect for the court and does not mean the advocate may dishonor the judicial system and demean the court simply because it will advance his client's cause.

The complaint was filed on July 20, 1983. The defendant and its counsel could have terminated the matter quickly. Instead they forged a pattern of concealment. Thus, on September 16, 1983, they filed their "certificate of authority" motion to dismiss the complaint; at no point, either at the briefing stage, or during oral argument, did Mr. Short disclose what only the defendant; he and his firm knew, that they were toying with their adversary and this court, truly a violation of the spirit if not the letter of Fed.R.Civ.P. 7.[6]

---

**5.** It was the first of these answers that was intentionally misleading. There is irony in defendant's requiring 4½ months to supply this answer.

**6.** This motion was signed by local counsel. The names of both the Washington firm and local counsel appear on it in typewritten form only.

After the defendant's motion was denied, its answer was filed on November 28, 1983.[7] As has been noted, it was a most deceptive document, totally inconsistent with the letter and the spirit of Fed.R. Civ.P. 11. The defense argument that it did not contain a false statement not only overlooks that falsity may lie in omission as well as commission, here defendant's refusal to answer that paragraph of the complaint that asserted diversity jurisdiction; the argument is founded on a false premise in that a misleading message was affirmatively conveyed by inclusion of the counterclaim, namely, that subject matter jurisdiction existed. *See* p. 98, n. 1, *supra*. It is incredible that counsel would advance a counterclaim knowing that, under either ancillary or primary jurisdiction concepts, there was no power in the court to hear it. As was true with respect to other aspects of defense counsel's conduct herein, they have provided no explanation—or even offered the slightest suggestion—of how their assertion of a counterclaim can be reconciled with the court's lack of jurisdiction over it or the primary claim. A finding of wilfulness or lack of good faith is not required in determining a violation of Rule 11;[8] however, if there were such a requirement, *cf.* 28 U.S.C. § 1927, it would here be met. The court cannot escape the conclusion that the answer was filed "for ... [an] improper purpose. ..." *See* Fed.R.Civ.P. 11. The defendant and its counsel inserted the counterclaim to further their strategy of concealment and deception of the plaintiff and the court. If, as they now contend, they intended to eventually disclose lack of diversity when they first adopted their obstructive scheme, then the counterclaim did not and could not serve a meritorious or substantive purpose. Moreover, the counterclaim was never withdrawn; it remained in the answer through the extensive discovery that was undertaken and the several motion appearances by counsel before the court, until dismissal of the case.

It is concluded that joint and several liability for sanctions must be imposed upon the defendant and counsel for this egregious violation of Rule 11. In this connection, it appears that while the answer bears the typewritten names of both Washington, D.C., counsel and local counsel, only the signature of Mr. Landis, local counsel, was affixed.

Next is the carefully drawn answer to plaintiff's interrogatory that sought the defendant's place of incorporation. The court does not overlook that defense counsel violated the mandate of Fed.R.Civ.P. 26(g) by not signing the answer; only the signature of Mr. James F. Dillon, defendant's Director of Corporate Maintenance, appears.[9]

**7.** The answer was signed by local counsel. The names of both firms are typed thereon.

**8.** *See Eavenson v. Holtzman,* 775 F.2d 535, 540 (3d Cir.1985):

Recent amendments to Fed.R.Civ.P. 11 now authorize sanctions to be imposed upon an attorney who violates his or her certification that good grounds support his or her pleading and that the pleading is not interposed for delay. *See Walsh v. Schering-Plough Corp.,* 758 F.2d 889, 895 (3d Cir.1985). The standard for testing conduct under amended Rule 11 is reasonableness under the circumstances, a more stringent standard than the original good-faith formula. Notes of Advisory Committee on Rules, 1983 Amendment, Fed.R. Civ.P. 11. Thus, subjective bad faith is no longer a predicate to a Rule 11 violation; the test is now an objective one of reasonableness. *Westmoreland v. CBS, Inc.,* 770 F.2d 1169 (D.C.Cir.1985); *In re TCI Limited,* 769 F.2d 441 (7th Cir.1985); *Davis v. McGraw-Edison Company,* 765 F.2d 494 (5th Cir.1985); *Eastway Construction Corp. v. City of New York,* 762 F.2d 243 (2d Cir.1985); *Elliott v. Perez,* 751 F.2d 1472 (5th Cir.1983). *See also* Schwarzer, Sanctions Under the New Federal Rule 11—A Closer Look, 104 F.R.D. 181 (1985). However, in exercising its discretion, the district court "is expected to avoid using the wisdom of hindsight and should test the signer's conduct by inquiring *what was reasonable to believe at the time the pleading, motion, or other paper was submitted."* Notes of Advisory Committee on Rules, *supra,* (emphasis added)....

**9.** The names of both the Washington, D.C., firm and local counsel appear in typewritten form on the interrogatory answers. Parenthetically, it is noted that defense counsel have agreed that if sanctions are to be imposed, they should fall upon counsel and not their client, the defendant.

It would be inequitable indeed if, having wilfully drawn this answer for an improper purpose, counsel could now escape responsibility for it and thereby impose the burden of sanctions only upon Mr. Dillon and the defendant. The court thus finds that counsel and Mr. Dillon (and the defendant) must bear joint and several liability for this deception.

As to the remaining matters, defense counsel, acting affirmatively on their motion for reargument after the court struck their "settlement" affirmative defense, and reacting with lengthy briefs to plaintiff's summary judgment motions, continued to maintain the illusion of jurisdiction. Their motion was signed by a member of local counsel's firm; Mr. Short's name was typed in as "of counsel". It strains credulity that counsel was capable of appearing before this court repeatedly and arguing seriously and with a straight face that its arguments on the merits should be accepted by a court that counsel knew was powerless.

Based on the foregoing, the court concludes that Rules 7, 11 and 26(g) have been violated, as hereinabove specifically described. Additionally, by not bringing to the court's attention early in the proceedings its lack of jurisdiction and by wilfully and in bad faith concealing same from plaintiff and the court, while actively litigating the controversy, defendants violated 28 U.S.C. § 1927, which provides:

... Counsel's liability for excessive costs

Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

There can be no doubt that counsel here "unreasonably" and "vexatiously" multiplied the proceedings in this case by delaying as they did the disclosure of lack of subject matter jurisdiction.

Defendant's counsel have presented an undifferentiated and diffuse argument that the Federal Rules of Civil Procedure do not require that one having knowledge of lack of subject matter jurisdiction must promptly bring it to the court's attention. While this contention is not relevant to the violations of Rules 7, 11 and 26(g) that have been found, conceivably it has some bearing on the 28 U.S.C. § 1927 violation and thus will be considered.

It is true that under Rule 12(h)(3), bearing upon subject matter jurisdiction, it is not expressed that prompt notice of a jurisdictional defect must be given. The rule simply states:

Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action.

It is also true that no precedent has been found in which a party (or counsel) has had sanctions imposed for not raising lack of subject matter jurisdiction when first aware of it, if it is raised eventually before trial. *See DiLuigi v. Kafkalas,* 437 F.Supp. 863, 869–70 (M.D.Pa.1977), *vacated on other grounds,* 584 F.2d 22 (3d Cir. 1978), *cert. denied,* 440 U.S. 959, 99 S.Ct. 1500, 59 L.Ed.2d 772 (1979).

There is, however, more to the conduct of defendant and its counsel than a simple non-disclosure. There was not here a mere negligent failure to disclose. It was part of a plan and scheme to attenuate the proceedings and wound around its core were the several deceptions of the plaintiff and the court that have been earlier described. In addition to the rule and statutory violations thereby committed, defendant and its counsel were indifferent to the defined duty of candor owed by counsel to the court.

For example, in New Jersey's Code of Professional Responsibility (in effect in this district until September 10, 1984, Local Rule 6), DR1–102(A)(4) and (5), provide that "[a] lawyer shall not ... engage in conduct involving dishonesty, fraud, deceit or misrepresentation" or "engage in conduct that

is prejudicial to the administration of justice."

Additionally, the American Bar Association Rules of Professional Conduct (which have been adopted by this court effective October 1, 1984, Local Rule 6) establish a lawyer's duty of candor to a court: "A lawyer shall not knowingly: (1) make a false statement of material fact or law to a tribunal...." The New Jersey Rules of Professional Conduct, adopted by the New Jersey Supreme Court effective September 10, 1984, add that a lawyer "shall not knowingly ... (5) fail to disclose to the tribunal a material fact with knowledge that the tribunal may tend to be misled by such failure." The Comment to this rule explains: "An attorney has an obligation to be candid and act with good faith toward the tribunal."

■ Limits to an advocate's zealous representation of his client are also imposed by the recent amendments to Fed.R.Civ.P. 7, 11, 16 and 26(g). The amendments make it clear that a claim of zealous advocacy will not serve to avoid sanctions for violations of the standards and norms established by those rules.

As one court recently put it:

... [a]ttorneys are officers of the court and their first duty is to the administration of justice. Whenever an attorney's duties to his client conflict with those he owes to the public as an officer of the court, he must give precedence to his duty to the public. Any other view would run counter to a principled system of justice.

*Van Berkel v. Fox Farm & Road Machinery,* 581 F.Supp. 1248, 1251 (D.Minn.1984). There is a "duty imposed upon counsel to deal fairly and sincerely with the court and opposing counsel so as to conserve the time and expense of all, and that actions may be litigated in an orderly manner." *Basso v. Utah Power and Light Co.,* 495 F.2d 906, 910 n. 1 (10th Cir.1974) (quoting *Page v.*

*Wright,* 116 F.2d 449, 454–55 (7th Cir. 1940)).

Thus, defense counsel here cannot validly claim that what they and their client did is excused on the basis of the "duty to client" contention.

Knowing the court lacked jurisdiction over the matter, the defendant and its counsel not only litigated the matter as if it did, but went out of their way to induce the belief in the plaintiff and the court that it did. This reflected a total lack of respect for their adversary and the court and an abuse of the judicial process that cannot be tolerated.

It has heretofore been stated that the asserted underlying strategy of the defendant and its counsel was to so attenuate the proceedings that, by the time the court had to dismiss the complaint (and counterclaim), some of plaintiff's claims would be barred by the statute of limitations. While the court is somewhat skeptical as to whether this was the real reason,[9a] given the foregoing analysis a determination on this issue is unnecessary. It should not be overlooked, however, that plaintiff was forced to incur substantial expenses that would not have been necessary if the defendant and its counsel had conformed to the standards of conduct the rules and statute now impose upon litigants and their counsel.

Given the foregoing violations, the defendant itself (based on its violation of Rule 26(g)) and its counsel, both Washington, D.C. and local counsel, must suffer sanctions.

A word about local counsel is appropriate. The court recognizes that the requirement that out of state counsel coming into our court associate themselves with New Jersey counsel may be an anachronism. Nonetheless, it is still a requirement and, while it remains so, New Jersey counsel are not without responsibilities in complying with the rules and statutes. The New Jersey firm here involved apparently at times permitted an associate to act for it.

---

**9a.** *Galligan v. Westfield Centre Service,* 82 N.J. 188, 412 A.2d 122 (1980) (where federal claims were dismissed for lack of diversity, limitations period was tolled during period case was in federal court).

His affidavit in this proceeding reveals he had some uneasiness about the litigation strategy which was conceived by Washington counsel. Nonetheless, in the end, he joined in and effectuated this strategy and thus his firm is liable for sanctions penalties to the same extent as are the Washington lawyers.

Before discussing the nature of the sanctions to be imposed, consideration must be paid to the argument of defendant and its counsel that the plaintiff should not derive any benefit from any sanctions imposed upon them. They contend that the plaintiff's counsel was negligent in stating in the complaint that the defendant was a Puerto Rico corporation and in not thereafter discovering that there was no diversity jurisdiction, particularly since the answer denied Puerto Rico incorporation. Initially, it must be noted that the "reasonable inquiry" requirement of Fed.R.Civ.P. 11 was not in being when the complaint was filed on July 20, 1983. Next, prior to answering the defendant and its counsel had moved to dismiss the complaint on a ground unrelated to subject matter jurisdiction. Moreover, the denial of Puerto Rico incorporation did not convey the notion that the defendant was a Delaware corporation. Finally, any modicum of concern plaintiff might have had, based on the denial, would certainly have been removed by the defendant's not responding to the jurisdiction-claim paragraph. Plaintiff's counsel could justifiably assume that a defendant knowing of lack of subject matter jurisdiction would raise it. There is still another reason why this assertion of plaintiff's negligence is without merit: not only was the lack of subject matter jurisdiction not raised as an affirmative defense; the answer, as has been earlier pointed out, contained a counterclaim, effectively stating there was subject matter jurisdiction. If any suspicion remained that there was no jurisdiction, it would have been dispelled, as defendant and its counsel intended it would be, by their subsequent conduct in the lawsuit.

While this analysis of defendant's argument is appropriate, it should also be mentioned that, at the evidentiary hearing held on April 29, 1985, the defendant and its counsel did not seek to take testimony from plaintiff's counsel relating to the designation of Puerto Rico as the place of defendant's incorporation.

Nor is it a tenable argument that plaintiff should be barred from claiming benefits from sanctions against the defendant and counsel because plaintiff's counsel had overlooked that they had, by omission, deceptively answered plaintiff's interrogatory. While it is true plaintiff's counsel should have observed that some of the interrogatory had not been answered, he had a right to believe that he was dealing with honorable adversaries and that the deficiency was not significant.

■ Turning to the nature of the sanctions to be imposed, striking of pleadings or barring of evidence is of course not here available. Instead, it is appropriate to impose monetary sanctions in the form of excess costs, expenses and attorneys' fees. It is neither appropriate nor feasible to allocate sums to the particular acts of misconduct. Each such act had the same intended result. Thus, whether dealing with a violation of Rules 7, 11, 26(g), or 28 U.S.C. § 1927, the impact upon the plaintiff was as intended: the proceedings were attenuated and protracted and, litigating in good faith, plaintiff incurred substantial excess costs, expenses and attorneys' fees it would not otherwise have had to sustain. Responding to a suggestion of the defendant and its counsel that plaintiff should not be reimbursed for expenses and fees connected to plaintiff's motions for successive summary judgment, they are in no position to pose such an argument. At any time, after receipt of the first such motion, they could have aborted it under Fed.R.Civ.P. 12(h)(3).

Plaintiff has claimed the following attorneys' fees which, on the basis of what is before me, I find reasonable and consistent with the law of this Circuit: $2,922.50 for responding to PRMMI's motion to dismiss; $823.50 for the pretrial conference on April

19, 1984; $21,832.25 for plaintiff's initial motion for summary judgment; $508 for the pretrial conference on August 27, 1984; $3,117 for PRMMI's motion for reconsideration; $2,924.25 for plaintiff's second motion for summary judgment; $3,476 for its third motion for summary judgment; $6,878.50 for its motion for sanctions. Plaintiff's Attorneys' Fee Information, filed June 14, 1985. Defense counsel has not as of now contested the accuracy or reasonableness of any of these items.[10] However, if they wish to do so, they will be given that opportunity and I will immediately set the matter down for further briefing and analysis.

Attorneys' fees incurred in the two pretrial conferences, which were required by the court, are not recoverable. The remaining fees incurred total $41,150.50. Judgment will be entered in this amount against the defendant and its counsel, jointly and severally, subject to the defendant's right to challenge said fees as stated in the preceding paragraph.

The affront to the court cannot be dismissed lightly. Courts would soon be laughing-stocks and objects of ridicule if counsel could with impunity toy with them, as defendant's counsel did here, engaging for example in serious arguments addressed to the merits of motions to a court that had no right to hear those arguments. As the Court of Appeals of this Circuit recently stated:

> ... The dramatic rise in litigation in the last decade has led trial judges to conclude that indulgent toleration of lawyers' misconduct is simply a luxury the federal court system no longer can afford.

*Eash v. Riggins Trucking, Inc.*, 757 F.2d 557, 565 (3d Cir.1985) (*en banc*); *see also Baker Industries, Inc. v. Cerberus Limited*, 764 F.2d 204, 211–12 (3d Cir.1985).

The court has maintained no records on the court's time consumed in chambers and on the bench. Certainly it was considerable, and defendant's counsel knew it would be, given the various issues raised on the several matters placed before the court. Yet said counsel do not regard this as an intolerable imposition. Instead, they dismiss it as analogous to a situation where a court spends time on a case that is ultimately settled. The analogy is flawed.

That sanctions should be imposed for the abuse of the judicial process as it directly impacted upon the court is clear. Less clear is what form those sanctions should take.

While the Federal Rules of Civil Procedure 7, 11, 16 and 26(g), and 28 U.S.C. § 1927, on their face do not bar monetary sanctions, imposed not to benefit other counsel but to vindicate the dignity of the judicial process, a court must have regard for the fact that a substantial penalty in the nature of a fine may not be permitted for a rule or § 1927 violation. Instead, it is arguable that it may be regarded as a criminal contempt matter, requiring, of course, the procedures of 18 U.S.C. § 401 and Fed.R.Cr.P. 42.

*Eash* is instructive in this respect. While dealing with a trial court's inherent power, Judge Adams, writing for the majority of the *en banc* court, in overruling *Gamble v. Pope & Talbot, Inc.*, 307 F.2d 729 (3d Cir.), *cert. denied*, 371 U.S. 888, 83 S.Ct. 187, 9 L.Ed.2d 123 (1962), and holding that a monetary penalty could be imposed upon an attorney for "abusive litigation practices," *Eash, supra*, 757 F.2d at 568, repeatedly referred to "a modest" or "a reasonable" sanction. *Id.* at 566, 567.

Under the circumstances of this case I find a $5,000 sanction, to be paid to the government, to be "a modest" or "a reasonable" one. However, if on appellate review it is deemed that such a sum cannot be awarded for the rule and statutory violations found here, or under the inherent power of the court, because of the impera-

---

10. The fees claimed by plaintiff do not include any expenses incurred in conducting discovery. Since most of this discovery is useful to plaintiff in the state court action recently commenced, such should not be recoverable in any event. Additionally, no claim is made for other costs and expenses.

tives of 18 U.S.C. § 401 and Fed.R.Cr.P. 42, it would appear that no less than $500 would be appropriate.

Judgment will be entered in accordance with this opinion.

### ORDER

The court having considered all the papers and evidence submitted by the parties and having heard oral argument from the parties;

IT IS on this 29 day of October 1985 ORDERED that plaintiff's motion for the award of attorneys' fees is granted in the amount of $41,150.50, payable by defendant and its counsel jointly and severally, for the reasons set forth in the accompanying opinion, subject to further order of this court evaluating the amount of fees as provided for in said opinion; and

IT IS FURTHER ORDERED that a sanction, payable to the United States in the amount of $5,000, is imposed on defendant's counsel.