887 A.2d 1191 (2005)
382 N.J. Super. 181
Nicholas MASONE, Plaintiff-Appellant,
v.
Carl S. LEVINE, Esq., Carl S. Levine & Associates, P.C., Defendants, and
Leon Grauer, Esq., Defendant-Respondent.
Carella, Byrne, Bain, Gilfillan, Cecchi, Stewart & Olstein, Appellants.
Superior Court of New Jersey, Appellate Division.
Argued October 11, 2005.
Decided December 29, 2005.
*1192 Brian H. Fenlon, Roseland, argued the cause for appellant Nicholas Masone and pro se appellant law firm (Carella, Byrne, Bain, Gilfillan, Cecchi, Stewart & Olstein, attorneys; Mr. Fenlon, on the brief).
Henry F. Furst, argued the cause for respondent.
Before Judges CUFF, LINTNER and GILROY.
The opinion of the court was delivered by
CUFF, P.J.A.D.
In 1993, Leon Grauer agreed to serve as local counsel for Carl S. Levine, who was retained to defend a matter commenced by plaintiff Nicolas Masone. In 2001, Masone filed a complaint against Levine *1193 and Grauer that asserted claims of professional negligence and negligent misrepresentation arising from the 1995 settlement of the initial litigation. Masone appeals from an order granting Grauer's motion for summary judgment and Masone's attorneys, Carella, Byrne, Bain, Gilfillan, Cecchi, Stewart and Olstein, (Carella Byrne) appeal from an order imposing frivolous litigation sanctions against the firm. We affirm.
On appeal, we use the same standard as the motion judge to decide a motion for summary judgment. Prudential Prop. & Cas. Ins. Co. v. Boylan, 307 N.J.Super. 162, 167, 704 A.2d 597 (App.Div.), certif. denied, 154 N.J. 608, 713 A.2d 499 (1998). Thus, the movant must demonstrate that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540, 666 A.2d 146 (1995); R. 4:46-2(c). "An issue of fact is genuine only if, considering the burden of persuasion at trial, the evidence submitted by the parties on the motion, together with all legitimate inferences therefrom favoring the non-moving party, would require submission of the issue to the trier of fact." R. 4:46-2(c).
Here, the central factual issue is whether Grauer knew, at the time the 1993 litigation was settled, that Levine falsely represented that his client's insurance company would contribute to the cost of site remediation. The central legal issue in this case is whether Grauer's status as local counsel renders him liable for the defalcations of out-of-state counsel.
In 1982, plaintiff leased commercial property to A. Tarricone, Inc. (ATI) to operate a gas station. During ATI's tenancy in summer 1990, a gasoline tank leaked and caused a spill of at least 1200 gallons of gasoline. Plaintiff filed an action to compel ATI to remediate the ground contamination caused by the spill. ATI retained Carl Levine and his law firm Carl S. Levine & Associates to represent it. Levine, however, was not admitted in New Jersey; therefore, he sought and obtained admission pro hac vice. On December 3, 1993, Grauer was designated local counsel for ATI.
Levine advised Grauer that he would handle all aspects of the litigation commenced by Masone. Levine specifically told Grauer that he would handle all communication and negotiations with ATI and opposing counsel, all substantive law matters, all communications with ATI, and prepare all court documents and filings. Grauer agreed to appear in court when necessary and to review the pleadings and other court documents that were to contain his signature to assure compliance with New Jersey procedural rules.
On June 5, 1995, the parties and their attorneys were in the Essex County Courthouse to try the case. Plaintiff was represented by Carl Woodward, III, of Carella Byrne; Levine and Grauer represented ATI. At that time, settlement discussions had reached a point where ATI agreed to pay for the remediation but Woodward, on behalf of his client, required some security for the payment. Levine then placed a telephone call to an adjustor for ATI's comprehensive general liability insurance company. Woodward and Grauer were standing in a hallway of the courthouse during the telephone call and observed Levine speaking on the telephone. Neither Woodward nor Grauer heard the conversation between Levine and the adjustor. Both Woodward and Grauer saw Levine terminate the telephone call and both heard Levine state that "ATI's insurance carrier was on board with the settlement and would participate in the required clean-up and remediation of the Property."
*1194 As a result, all parties appeared before the trial judge to place the settlement on the record. Levine outlined the terms of the settlement. Woodward elaborated on certain terms and confirmed that the terms of the settlement were acceptable to plaintiff. Finally, the judge asked each attorney to "indicate for the record their agreement with what's been stated." Grauer informed the judge that "[o]n behalf of ATI, Your Honor, we agree with what has been stated." The terms of the settlement outlined on the record did not include any undertaking by ATI's insurance carrier.
Grauer did not sign the stipulation of settlement; he did not participate in drafting the stipulation. Woodward conceded that he did not know whether Grauer had even seen the document. Unlike the agreement detailed on the record on June 5, 1995, the stipulation of settlement refers to the availability of insurance proceeds to defray the cost of the remediation.
By letter dated December 15, 1995, Levine informed Woodward that neither ATI nor its insurance carrier had any intention to avoid the responsibilities agreed to in the settlement. At some point, however, ATI failed to perform further remediation required by the New Jersey Department of Environmental Protection (NJDEP), and in May or June 1997, Woodward received notice that ATI had filed for bankruptcy and would not perform any further work required by NJDEP. In July 1997, during a telephone conversation, Levine informed Woodward that ATI's insurance carrier had declined coverage, would not participate in any further remediation, had never agreed to do so, and had never authorized the settlement. Grauer was not a party to this telephone conversation.
On September 6, 2001, Masone filed a complaint against Levine, his firm and Grauer alleging professional negligence and negligent misrepresentation. Masone also filed the requisite Affidavit of Merit prepared by Edward Wacks, a New Jersey attorney. In this document, Wacks opined that Levine and Grauer performed their professional responsibilities "outside acceptable professional legal standards expected of New Jersey attorneys." Wacks stated that he relied on information provided to him by plaintiff's attorney and assumed that Levine and Grauer each represented to Woodward that the remediation costs would be paid by ATI's insurance. On August 11, 2003, while cross-motions for summary judgment were pending, Masone reached a settlement with Levine, who agreed to pay $60,000. Grauer's attorney requested that plaintiff dismiss the complaint against Grauer and advised that he considered the complaint frivolous. Plaintiff refused to do so and on October 1, 2003, Grauer filed a motion for summary judgment.
Judge Winard held that Grauer did not owe a legal duty to Masone. He also found that Grauer's relationship with ATI was highly attenuated, such that it did not create "a sufficient duty of care relative to the conduct of the proceeding and of its disposition." As to any misrepresentation, the judge also found
that any transmission or knowledge by Grauer, if any, with respect to the approval of the settlement by ATI's insurer was without knowledge, was unwittingly communicated or digested by Mr. Grauer inferentially in his representation to Judge Minuskin. There is no evidence of a conscious, a knowing or a voluntary misrepresentation either by acts of commission or omission which knowingly and consciously or negligently would lead to a foreseeable reliance by Mr. Masone on Mr. Grauer's representation to Judge Minuskin. Clearly, ... it was the representation of Levine on the *1195 record to Judge Minuskin that represented the material elements of the settlement agreement upon which reliance was predicated, not only by Mr. Woodward... the client and Judge Minuskin in terms of his approval of the settlement. The[] mere presence of Mr. Grauer at the settlement conference is not ... determinative of the extent of his duty or responsibility owed by him to ATI for purposes of tort [liability].
In order to sustain a cause of action based on negligent misrepresentation, the plaintiff must establish that the defendant negligently made an incorrect statement of a past or existing fact, that the plaintiff justifiably relied on it and that his reliance caused a loss or injury. Kaufman v. i-Stat Corp., 165 N.J. 94, 109, 754 A.2d 1188 (2000); H. Rosenblum, Inc. v. Adler, 93 N.J. 324, 334, 461 A.2d 138 (1983). Here, as found by the motion judge, there are no facts that establish, directly or inferentially, that Grauer knew that ATI had not agreed to contribute to the cost of remediation. In fact, the summary judgment record establishes that Grauer knew only what Levine represented to Woodward. There is nothing in the record from which a reasonable trier of fact could conclude that Grauer was a party to the telephone call between Levine and the insurance adjustor or that he knew that Levine made a misstatement of fact. Grauer did not participate in the drafting of the settlement stipulation, and he did not sign it. Grauer did not receive a copy of Levine's December 15, 1995 letter to Woodward that assured him that neither ATI nor its insurance company had any intention to avoid its responsibilities. In short, there was no factual basis for the negligent misrepresentation claim against Grauer. Judge Winard properly granted summary judgment on this claim.
Plaintiff urges that Grauer's status as local counsel for an attorney admitted pro hac vice rendered him responsible for Levine's negligent acts. Plaintiff contends that acts of out-of-state counsel will be imputed to local counsel and local counsel will be liable to third parties to the same extent as out-of-state counsel. Plaintiff also asserts that Grauer owed a legal duty to him not to tender false representations as to material terms of the settlement.
Plaintiff was admittedly not a client of Grauer. Plaintiff contends, however, that Grauer had a duty not to provide misleading information when Grauer knew that plaintiff would rely on it to conclude the litigation. Specifically, plaintiff asserts that Grauer knew that plaintiff sought assurances that the promised remediation by ATI would actually be accomplished and the representation that the insurance company would contribute to the cost of remediation provided that assurance. Therefore, the representation was a material component to plaintiff's agreement to settle and to dismiss its complaint against ATI.
In Petrillo v. Bachenberg, 139 N.J. 472, 479, 655 A.2d 1354 (1995), the Court stated that "[w]hether an attorney owes a duty to a non-client third party depends on balancing the attorney's duty to represent clients vigorously, with the duty not to provide misleading information on which third parties foreseeably will rely." (citations omitted). In Petrillo and each of the cases cited by the Court that recognized a duty of a lawyer to a non-client, the attorney induced specific non-clients to rely on the attorney's representations. Id. at 479-80, 655 A.2d 1354. While a jury could have reasonably concluded that plaintiff would have relied on Levine's representation that the cost of the remediation would be covered by insurance proceeds, there was no evidence that Grauer knew that the representation *1196 was false. Therefore, in this case, Grauer owed no duty to plaintiff as a matter of law.
Plaintiff insists, however, that Grauer is responsible for the misrepresentation of Levine due to his status as local counsel. Admission of counsel pro hac vice is governed by Rule 1:21-2. Section 2(c)(4) specifically addresses the role of local counsel; it states:
(c) ... The order granting admission pro hac vice shall require the attorney to:
* * *
(4) have all pleadings, briefs and other papers filed with the court signed by an attorney of record authorized to practice in this State, who shall be held responsible for them and for the conduct of the cause and of the admitted attorney therein. The order may contain further requirements concerning the participation of New Jersey counsel as the court from time to time deems necessary. (emphasis added)
[R. 1:21-2(c)(4).]
Plaintiff urges that the rule renders Grauer liable to the same extent as Levine for Levine's actions without any consideration of Grauer's fault.
We have identified four cases, three of which are apposite, that have considered this rule or the federal counterpart in the District of New Jersey.[1] In each case in which sanctions were imposed, the record revealed active participation by local counsel in the offending conduct. In Itel Containers International Corp. v. Puerto Rico Marine Management, Inc., 108 F.R.D. 96, 99, 104-05 (D.N.J.1985), sanctions were imposed on local counsel as well as out-of-state counsel admitted pro hac vice because the local counsel knew from the commencement of the litigation that the parties were not diverse and actively engaged in the strategy devised by foreign counsel to conceal that jurisdictional fact from the district court as long as possible. As a remedy, the court imposed monetary sanctions in the form of excess costs, expenses and attorneys' fees on local counsel. Id. at 105.
In Maldonado v. State of New Jersey, 225 F.R.D. 120 (D.N.J.2004), the court declined to apply a per se disqualification of local counsel on the basis of the out-of-state attorney's conduct. The issue of disqualification of out-of-state counsel and local counsel arose in the context of the circumstances under which plaintiff's counsel obtained a letter written by his supervisors that was protected by the attorney-client privilege and work product doctrine and their refusal to relinquish the document. Although the court determined that disqualification of both counsel was an appropriate remedy because both counsel were equally involved in handling the letter, the court held that "a per se rule disqualifying local counsel based ... on the out-of-state attorney's conduct is not justified. Instead, it is more appropriate to evaluate each attorney's conduct independently." Id. at 136.
Rule 1:21-2 and its federal counterpart are also discussed at length in Ingemi v. Pelino & Lentz, 866 F.Supp. 156 (D.N.J. 1994), and is relied on heavily by plaintiff. We consider that reliance misplaced because it is factually distinguishable and the legal discussion is wholly dicta. The opinion concerns a motion to remand a legal malpractice case to state court and a motion to file a third party complaint. The motion for remand was granted. Id. at 158. The discussion of the responsibility of local counsel arose in the context of an argument that local counsel was not a proper party to the legal malpractice action. *1197 Id. at 161. The court noted, however, that the facts strongly suggested that local counsel had acted actively and jointly with out-of-state counsel. Id. at 160-61. To be sure, the court observed that local counsel was required to actively participate in the representation of the client and shun a de minimus role, id. at 162, nevertheless, the court addressed the issue in the context of a procedural motion at the very early stages of the litigation.
These cases, although not precedential, are instructive. It is noteworthy that each court that considered the imposition of sanctions on pro hac vice counsel and local counsel for misconduct during the course of the litigation considered the nature and extent of the involvement of local counsel in the behavior that precipitated the sanction. In other words, the misconduct of pro hac vice counsel alone was not considered sufficient to impose a sanction on local counsel. Moreover, the only case that discussed the possibility of liability for tortious conduct, such as professional negligence, involved a case where the local counsel appeared to have been substantially involved in the legal representation of the client. Ingemi, supra, 866 F.Supp. at 160.
Although local counsel who acts solely as a "mail drop" may not be discharging the role contemplated for local counsel by Rule 1:22-2, we hesitate to interpret the rule charging local counsel with responsibility for the course of the litigation as imposing virtually absolute liability on local counsel for the misdeeds of pro hac vice counsel. We recognize that the rule requiring local counsel when an attorney is admitted pro hac vice is designed to assure the proper conduct of litigation in the courts of this State. To that end, local counsel is charged with the responsibility for the conduct of the litigation. Local counsel may, therefore, be subject to sanctions or liability in the appropriate case. See Itel Containers, supra, 108 F.R.D. at 105. On the other hand, we do not interpret the responsibility local counsel assumes for the conduct of the litigation to extend to that of an insurer or indemnitor for the acts of pro hac vice counsel.
On the face of this record, however, that is precisely what Masone advocates. Yet, as noted, there is no evidence, and no reasonable inference can be drawn from the evidence, that Grauer knew that Levine's representation to plaintiff, his attorney or the court was unfounded and that Levine knew it was unfounded. Therefore, we are satisfied that Judge Winard properly granted summary judgment in favor of Grauer.
This appeal also addresses the frivolous litigation sanction imposed on plaintiff's law firm, Carella Byrne. By order dated April 30, 2004, the motion judge imposed a $15,000 sanction against Carella Byrne. We affirm.
On June 28, 2003, citing Rule 1:4-8, Grauer's attorney wrote to plaintiff's counsel requesting that he dismiss the complaint against Grauer. Levine had settled the claim against him for $60,000 and plaintiff had just filed a motion for summary judgment against Grauer. The letter noted that "[a]s your recently submitted summary judgment makes clear, ... Mr. Grauer had no discussions with ATI, its insurance carrier or any individual on behalf of its insurance carrier. He made no representations that would expose him to personal liability, which is acknowledged in your brief." On October 31, 2003, Grauer's attorney renewed his request that the complaint be dismissed and restated his intention to seek fees for frivolous litigation. The summary judgment order was entered the same day, and on November 20, 2003, Grauer's attorney filed *1198 a motion for sanctions pursuant to Rule 1:4-8. Carella Byrne argued, and repeats this argument on appeal, that its complaint against Grauer cannot be considered frivolous because it was supported by an Affidavit of Merit.
Pursuant to Rule 1:4-8(d)(2), sanctions for frivolous litigation may include "reasonable attorneys' fees and other expenses incurred as a direct result of the violation, or both." "An attorneys' fees sanction pursuant to R. 1:4-8 `is not warranted where the plaintiff has a reasonable good faith belief in the merit of [its] action.'" DeBrango v. Summit Bancorp, 328 N.J.Super. 219, 227, 745 A.2d 561 (App.Div.2000) (alteration in original) (quoting J.W. v. L.R., 325 N.J.Super. 543, 548, 740 A.2d 146 (App.Div.1999)).
Rule 1:4-8 supplements N.J.S.A. 2A:15-59.1, which is the frivolous claim statute. The rule was amended after the Court's decision in McKeown-Brand v. Trump Castle Hotel & Casino, 132 N.J. 546, 626 A.2d 425 (1993), which limited sanctions to parties and excluded counsel. Pressler, Current N.J. Court Rules, comment 1 on R. 1:4-8 (2005).
[N.J.S.A. 2A:15-59.1] states that in order for costs to be awarded to the prevailing party because of a frivolous claim, a showing should be made that the nonprevailing party either brought the claim in bad faith for harassment, delay, or malicious injury; or "knew, or should have known that the complaint [or] counterclaim ... was without basis in law or equity...."
[Buccinna v. Micheletti, 311 N.J.Super. 557, 562-63, 710 A.2d 1019 (App.Div. 1998) (alteration in original) (quoting N.J.S.A. 2A:15-59.1b(2)).]
The legislature intended that judicial discretion should be used in determining an award for fees pursuant to N.J.S.A. 2A:15-59.1. DeBrango, supra, 328 N.J.Super. at 229, 745 A.2d 561. Thus, by analogy, the abuse of discretion standard should apply to the award of attorneys' fees pursuant to Rule 1:4-8.
Although the ordinary "abuse of discretion" standard defies precise definition, it arises when a decision is "made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis." In other words, a functional approach to abuse of discretion examines whether there are good reasons for an appellate court to defer to the particular decision at issue. It may be "an arbitrary, capricious, whimsical, or manifestly unreasonable judgment."
[Flagg v. Essex County Prosecutor, 171 N.J. 561, 571, 796 A.2d 182 (2002) (citations omitted).]
Thus, abuse of discretion is demonstrated if the discretionary act was not premised upon consideration of all relevant factors, was based upon consideration of irrelevant or inappropriate factors, or amounts to a clear error in judgment. Ibid.
Plaintiff contends that because he obtained an Affidavit of Merit supporting his claim, his complaint was not frivolous. Plaintiff filed an Affidavit of Merit prepared by Wacks in support of his claim against defendant. The Affidavit of Merit states that:
On the basis of the facts which have been related to me by [plaintiff's counsel] and based upon my review of the complaint filed in this matter as well as other documents provided by me, I hereby certify that there exists a reasonable probability that the care, skill or knowledge exercised or exhibited in providing legal services ... [by defendants] fell outside acceptable professional standards expected of New Jersey attorneys.
*1199 In addition, the Affidavit of Merit states that Wacks relied on the following information in forming his opinion:
In connection with the settlement negotiations, Levine and Grauer each represented to [Plaintiff's counsel], and to other parties, that the financial obligations undertaken pursuant to the settlement and work required thereunder would be paid by ATI and its insurer.
However, the affidavit fails to identify the source for the proposition that Grauer represented that the insurer would indemnify plaintiff. The court reasoned that the Affidavit of Merit is a threshold requirement "as to the genuineness of a claim for malpractice... at the outset in order to avoid fraudulent, misdirected claims against professionals which lacked any merit at all." However, the court found that the Wacks Affidavit of Merit was sparse and that there was
no support at all in the record that would lead to a conclusion that the expert report is based on a good faith information rather than a sparse or non-existent information regarding the participation of [defendant] as it pertained to either his knowledge or his participation in the settlement negotiations... [and no evidence] that [defendant] was personally aware of insurance coverage having been obtained to effectuate the settlement agreement.
We decline to adopt a rule that an Affidavit of Merit immunizes the firm prosecuting a matter from Rule 1:4-8 sanctions. Such a rule is particularly inappropriate for a situation such as this case where the plaintiff's attorney supplies the expert with the facts, the expert assumes those facts are true, and discovery reveals those facts to be unfounded.
The firm also contests the amount of the sanction. It does not quarrel with the amount of fees incurred to respond to plaintiff's motion for summary judgment. It argues, however, that Grauer's attorney stated that he was not charging Grauer for his services.
A Rule 1:4-8 sanction is designed to deter frivolous litigation. Although Grauer's attorney may not have sought or expected payment, he was required to expend time and effort to defend that motion. Plaintiff does not contend that the work performed or the time expended was unnecessary or excessive. In this instance, the sanction imposed is closely correlated to the litigation sought to be discouraged. Under these circumstances, there is no mistaken exercise of the motion judge's discretion.
Affirmed.
NOTES
[1] D.N.J. L.Civ.R. 101.1(c).