**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R.1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3377-14T2

JOEMAX REALTY, INC.,

    Plaintiff-Appellant/
    Cross-Respondent,

v.

STONEWALL OF SADDLE RIVER,
L.P., NORTH AMERICAN LINEN,
L.L.C., PAUL V. D'AMBROSIO,
and MICHAEL D'AMBROSIO,

    Defendants-Respondents/
    Cross-Appellants,

and

NORTHEAST LINEN SUPPLY CO., INC.,

    Defendant-Respondent.

_____

Argued October 18, 2016 — Decided June 20, 2017

Before Judges Yannotti, Kennedy, and Gilson.

On appeal from the Superior Court of New
Jersey, Law Division, Union County, Docket No.
L-3629-14.

Robert J. Jeney, Jr., argued the cause for
appellant/cross-respondent (Jeney, Jeney &
O'Connor, attorneys; Mr. Jeney, on the brief).

Ronald L. Davison argued the cause for respondents/cross-appellants (Starr, Gern, Davison & Rubin, P.C., attorneys; Mr. Davison, on the brief).

Richard J. Allen, Jr., argued the cause for respondent (Kipp & Allen, attorneys; Mr. Allen and Karen A. Beerbower, on the brief).

PER CURIAM

Plaintiff Joemax Realty, Inc. (Joemax or plaintiff) appeals from a January 16, 2015 order that dismissed with prejudice its complaint against all defendants. Joemax also appeals from a February 20, 2015 order denying its motion for reconsideration. Certain defendants cross-appeal from an April 10, 2015 order denying their motion seeking sanctions against Joemax and its counsel for filing frivolous litigation. N.J.S.A. 2A:15-59.1; R. 1:4-8.

We affirm the order granting summary judgment to all defendants and the order denying Joemax's motion for reconsideration because the applicable statute of limitations barred Joemax's fraudulent transfer claims. We also affirm the order denying defendants' motion for sanctions.

I.

The underlying litigation arose out of a commercial lease and a separate sale of the lessee's assets. The facts were established in the summary judgment record.

Defendant North American Linen, LLC (NA Linen) operated a commercial laundry business and leased its business premises from plaintiff Joemax. Before 2008, NA Linen was apparently losing money and was unable to make its lease payments.

Defendant Michael D'Ambrosio managed NA Linen. Defendant Paul D'Ambrosio was Michael's father and, before 2008, he leant NA Linen significant monies through a partnership that he controlled. That partnership is defendant Stonewall of Saddle River, L.P. (Stonewall).

In April 2008, NA Linen sold most of its assets to defendant Northeast Linen Supply Co., Inc. (NELS). The purchase price for those assets was $3,382,686, which NELS paid with $2,113,131 in cash and a promissory note of $1,047,565 (the Promissory Note).

At the time of the 2008 asset sale, NA Linen owed Stonewall over $3 million and Stonewall held security interests in NA Linen's assets. Consequently, to make the asset sale, NA Linen had to discharge Stonewall's security interest. To accomplish that discharge, NA Linen, Stonewall, and NELS signed a "Release of Security Interest Letter," dated April 17, 2008. That letter provided that the purchase price for NA Linen's assets, including the Promissory Note, would be paid to Stonewall. Thus, on April 17, 2008, NA Linen assigned the Promissory Note to Stonewall.

Separately, in January 2009, Joemax sued NA Linen and others in Monmouth County for failure to pay the rents and other costs due under the commercial lease (the Monmouth County action). In July 2009, Joemax obtained a default judgment for $817,000 against NA Linen.

Joemax had also named other defendants in the Monmouth County action, including Paul D'Ambrosio. Joemax alleged that Paul D'Ambrosio had signed a guarantee to pay NA Linen's rents. The claims against Paul D'Ambrosio were ultimately settled and dismissed with prejudice in an order entered on July 21, 2014, in the Monmouth County action.

In December 2009, after Joemax obtained the default judgment against NA Linen, Joemax applied for a writ seeking to attach the Promissory Note given by NELS to NA Linen. Joemax's attorney sent a copy of that application to NELS. An attorney representing NELS responded to Joemax's attorney in a letter dated January 8, 2010. That January 8, 2010 letter enclosed a copy of the Promissory Note and advised Joemax that the Promissory Note was "subordinated to two different superior creditors of NELS . . . As a result of those subordination agreements, NELS is currently required to withhold payment to [NA Linen]."

A copy of the January 2010 letter was also sent to an attorney who had represented NA Linen in the asset sale. That attorney

sent Joemax's attorney a letter dated January 14, 2010, which advised Joemax that the Promissory Note had been assigned. In that regard, the January 14, 2010 letter stated:

> [W]e believe that a further clarification of the said Promissory Note is required in view of [Joemax seeking a writ of attachment against the Promissory Note.]
>
> . . .
>
> [P]lease be advised that on April 17, 2008, the said Promissory Note was assigned by [NA Linen] to its secured creditor. As a result, [NA Linen] has no interest in the Promissory Note that is subject to attachment.

In February 2010, Joemax's attorney served a subpoena on NELS seeking documents related to the sale of NA Linen's assets to NELS. NELS responded in July 2010, by producing a compact disc containing various documents related to the asset sale. The documents included a copy of the "Release of Security Interest Letter" dated April 17, 2008. That letter explained that the entire purchase price for the assets of NA Linen would be paid to Stonewall "in satisfaction of the indebtedness of [NA Linen] to Stonewall."

More than four years later, on September 10, 2014, Joemax's attorney wrote to NELS's attorney, claiming that NELS had withheld the "Release of Security Interest Letter." On September 15, 2014, NELS's attorney responded, noting that a copy of the letter had

been provided as part of the collection of documents on the compact disc that had been produced in July 2010.

On September 30, 2014, Joemax filed a verified complaint alleging that the transfer of the Promissory Note by NA Linen to Stonewall was a fraudulent transfer and that NELS assisted that fraudulent transfer.[1] Joemax's complaint asserted two counts under the fraudulent transfer action and named as defendants Stonewall, NA Linen, NELS, Paul D'Ambrosio, and Michael D'Ambrosio.

After filing answers, defendants moved to dismiss Joemax's complaint or, in the alternative, for summary judgment. Defendants argued that Joemax knew of the assignment of the Promissory Note by July 2010, but it waited beyond the applicable four-year statute of limitations to file its complaint. Defendants also argued that the assignment of the Promissory Note was not a fraudulent transfer. Finally, defendant Paul D'Ambrosio argued that the claims against him were barred by the entire controversy doctrine.

The trial court initially denied defendants' motion on November 21, 2014. A written statement of reasons accompanied that order. Defendants, however, moved for reconsideration, which the court granted. The court found that it had not fully appreciated the documents submitted and that defendants were

---

[1] On October 6, 2014, Joemax also filed an order to show cause, which was entered that same day.

entitled to summary judgment because Joemax's claims were barred by the statute of limitations. The court also held that the claims against Paul D'Ambrosio were barred by the entire controversy doctrine. The court explained the reasons for the rulings on the record on January 16, 2015. That same day, the court entered an amended order dismissing with prejudice Joemax's complaint against all defendants.

Joemax filed for reconsideration, but the court denied that motion in an ordered entered on February 20, 2015.

Thereafter, all defendants except NELS filed a motion for sanctions against Joemax and its attorney. Defendants argued that sanctions were warranted under the frivolous litigation statute, N.J.S.A. 2A:15-59.1, and Rule 1:4-8. The trial court denied that motion in an order entered on April 10, 2015. The court issued a written statement of reasons explaining that Joemax acted reasonably in bringing the lawsuit and the action was not frivolous. The court also clarified that it dismissed Joemax's complaint because the record established that by July 2010, Joemax knew of the assignment of the Promissory Note based on the documents produced to Joemax by defendants.

## II.

Joemax now appeals from the January 16, 2015 order granting summary judgment to defendants and the February 20, 2015 order

denying its motion for reconsideration. All defendants with the exception of NELS cross-appeal from the April 10, 2015 order denying their motion for sanctions. We address the appeal and cross-appeal in turn.

A. Joemax's Appeal

In reviewing a summary judgment order, we use a de novo standard of review and apply the same standard employed by the trial court. Davis v. Brickman Landscaping, Ltd., 219 N.J. 395, 405 (2014). Accordingly, we determine whether the moving party has demonstrated that there were no genuine disputes as to any material facts and, if not, whether the moving party is entitled to judgment as a matter of law. Id. at 405-06; Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995); R. 4:46.

Joemax makes two arguments on its appeal. First, it contends that the trial court applied an outdated version of the statute of limitations found in N.J.S.A. 25:2-31(a). Second, it contends that the court erred in applying the entire controversy doctrine. We need not spend time addressing the nuances of these arguments because the record establishes that by July 2010, Joemax knew that the Promissory Note had been assigned and, therefore, the applicable statute of limitations bars its claims against all defendants.

The claims in Joemax's complaint are based on the Uniform Fraudulent Transfer Act (the Act), N.J.S.A. 25:2-20 to -34. While Joemax does not expressly identify which sections of the Act it relies on, such claims can either be brought under N.J.S.A. 25:2-25(a) or (b), or N.J.S.A. 25:2-27(a) or (b). The statutes of limitations for all of those claims are set forth in N.J.S.A. 25:2-31. That statute of limitations provides that claims under N.J.S.A. 25:2-25(a) must be brought "within four years after the transfer was made or the obligation was incurred or, if later, within one year after the transfer or obligation was discovered by the claimant[.]" N.J.S.A. 25:2-31(a). Claims under N.J.S.A. 25:2-25(b) or N.J.S.A. 25:2-27(a) must be brought "within four years after the transfer was made or the obligation was incurred[.]" N.J.S.A. 25:2-31(b). Finally, claims under N.J.S.A. 25:2-27(b) must be brought "within one year after the transfer was made or the obligation was incurred." N.J.S.A. 25:2-31(c).

Here, the undisputed facts establish that Joemax knew of the transfer of the Promissory Note by July 2010, but it waited more than four years to file its fraudulent transfer action.

The document giving notice to Joemax was the letter sent by NA Linen's lawyer to Joemax's lawyer on January 14, 2010. At that point in time, Joemax was seeking to attach the Promissory Note. NA Linen's lawyer, however, informed Joemax that the Promissory

9

Note had been assigned to a secured creditor. Specifically, the letter stated: "[P]lease be advised that on April 17, 2008, the said Promissory Note was assigned by [NA Linen] to its secured creditor. As a result, [NA Linen] has no interest in the Promissory Note that is subject to attachment." There is no ambiguity in that disclosure. The letter informed Joemax that the Promissory Note had been assigned and, thus, transferred.

That Joemax knew of the transfer is reinforced by two additional documents that Joemax received by July 2010. In January 2010, Joemax received a copy of the Promissory Note. The Promissory Note stated that it could be assigned to Stonewall. In July 2010, Joemax received the Release of Security Interest Letter, which explained that the entire purchase price for the assets of NA Linen had been paid to Stonewall, in part through assignment of the Promissory Note. Those two documents established that Joemax knew by July 2010, that the Promissory Note had been assigned.

Thus, we need not address Joemax's argument that the trial court relied on an outdated version of N.J.S.A. 25:2-31(a). The question here is not whether or when Joemax could have or should have discovered the transfer of the Promissory Note. Instead, the undisputed material facts established that Joemax did discover the transfer of the Promissory Note by July 2010. We note further

10                                                      A-3377-14T2

that the trial court, here, ultimately clarified that it was granting summary judgment because it found that the record established that Joemax knew of the transfer by July 2010.

We also need not address the entire controversy doctrine argument because the claims by Joemax are barred by the applicable statute of limitations. Thus, we affirm the January 16, 2015 order granting summary judgment to defendants and the February 20, 2015 order denying reconsideration to Joemax.

B. Defendants' Cross-Appeal

In their cross-appeal, defendants, with the exception of NELS, argue that plaintiff's claims were frivolous and the trial court erred in not granting them fees and sanctions.

We review a trial judge's decision on an application for fees or sanctions under an abuse of discretion standard. United Hearts v. Zahabian, 407 N.J. Super. 379, 390 (App. Div.) (citing Masone v. Levine, 382 N.J. Super. 181, 193 (App. Div. 2005)), certif. denied, 200 N.J. 367 (2009). N.J.S.A. 2A:15-59.1 provides that a prevailing party in a civil action may be awarded reasonable costs and attorney's fees if the court finds that the complaint or defense of the non-prevailing party was frivolous. To be considered frivolous, the filing must be found to have been made in "bad faith, solely for the purpose of harassment, delay or malicious injury[,]" or made "without any reasonable basis in law

or equity and could not be supported by a good faith argument for an extension, modification or reversal of existing law." N.J.S.A. 2A:15-59.1(b).

Rule 1:4-8(b) provides that a party may make a motion for sanctions against another party's attorney that has filed a paper with a court for a frivolous purpose. The rule goes on to provide certain procedures that must be followed in order to qualify. The rule also imposes limitations on the amount that can be imposed as a sanction. R. 1:4-8(b) and (d).

The conduct warranting sanctions under Rule 1:4-8 or fees under N.J.S.A. 2A:15-59.1 has been strictly construed and narrowly applied. McKeown-Brand v. Trump Castle Hotel & Casino, 132 N.J. 546, 561 (1993); Wyche v. Unsatisfied Claims & Judgment Fund of N.J., 383 N.J. Super. 554, 560 (App. Div. 2006). Here, it was not initially obvious that plaintiff's claim was barred by the statute of limitations. Thus, we find no abuse of discretion in the trial court's decision denying defendants' motion for sanctions and fees.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3377-14T2