**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1731-23

SHAWNA MORRIS,

     Plaintiff-Appellant,

v.

DGMB CASINO HOLDING,
LLC, d/b/a RESORTS CASINO
& HOTEL,

     Defendant-Respondent.

_____

Argued November 20, 2024 – Decided January 10, 2025

Before Judges Currier and Torregrossa-O'Connor.

On appeal from the Superior Court of New Jersey, Law Division, Atlantic County, Docket No. L-3923-21.

Frank N. DiMeo, Jr. argued the cause for appellant (Rosen Schafer & DiMeo, LLP, attorneys; Frank N. DiMeo, Jr., on the brief).

Rebecca D. Winkelstein argued the cause for respondent (Cooper Levenson, PA, attorneys; Rebecca D. Winkelstein, Victor P. Wasilauskas, III, and Jennifer B. Barr, on the brief).

PER CURIAM

Plaintiff Shawna Morris filed a complaint against defendant DGMB Casino Holding, LLC, d/b/a Resorts Hotel and Casino (Resorts), alleging negligence after she sustained injuries from a fall in her bathroom at the hotel. The trial court barred plaintiff's expert report and testimony as inadmissible net opinion and granted summary judgment to defendants. We affirm.

I.

A.

Plaintiff alleged that while a hotel guest at Resorts in Atlantic City in March 2020, she slipped attempting to step into the jacuzzi tub in her bathroom. She claimed her left foot slid backwards after she placed it in the tub, causing her to lose her balance and fall forward. As she fell, she grabbed a towel bar on the wall to the right of the tub with her right hand. She described in her deposition that the towel rack, on which two towels hung, came out of the wall as she fell, and her face "landed on top of [a] towel." "[The rack] was under the towel[] that [her] head was laying on." Plaintiff explained that her right hand was on the wall as she attempted to enter the tub, and grabbing the towel bar as she fell "was a reflex" because her right hand was close enough to grab it. She

recalled there were no "steps," "ladder[s]," "grab bars," "rails," or "handles" around the jacuzzi.

Plaintiff retained professional engineer Timothy Sass, MSCE, PE as an expert. Sass authored a report regarding defendant's liability and opined the bar plaintiff used to try to catch herself as she slipped "appear[ed] to be a grab bar" that failed to comply with various International Building Code (IBC) requirements. The report reflected no further basis for characterizing the bar as a "grab bar," but instead described the bar's noncompliance with industry standards for bathroom grab bars. Sass's report cited no requirement, code, or regulation mandating that grab bars or handrails be installed near a jacuzzi tub, but instead focused on code provisions regarding standards for design, installation, and maintenance when such bars are utilized.

Specifically, in his report, Sass stated the bar was not designed to resist a concentrated load of 250 pounds because it failed to support plaintiff who would have generated significantly less than a 250-pound load when she grabbed it. Sass applied the same reasoning to conclude the bar failed to comply with additional sections of the IBC, which required "handrails and guards" to be designed and "firmly fastened" to support "nominal load conditions including a 50 pound per lineal foot and/or 200 pound concentrated load." He then noted

the "bar lack[ed] visual cues that would alert people to [its] lack of structural capacity" and this "defective condition created a hazard to anyone attempting to enter or exit the jacuzzi," violating the IBC.

Sass's report also concluded the "bathroom towel bar" failed to comply with International Property Maintenance Code (IPMC) requirements for "[p]lumbing fixtures," but did not define that term or further explain how the bar met that definition. He characterized the bar as "defectively installed and maintained" and "incapable of supporting nominal loads." Thus, its "defective installation and maintenance . . . created an unsafe condition and would catch anyone by surprise." Further, Sass opined that because of the location of the bar, "one would expect [it to] be capable of supporting applied loads as one attempted to enter or exit the jacuzzi."

The report ultimately reflected Sass's conclusion to "a reasonable degree of engineering certainty" that the bar was "defectively installed and maintained in violation of code requirements and industry standards." Sass added his opinion that it is "foreseeable" and "reasonable to expect" that someone would use the bar to steady themselves and a "better jacuzzi installation would have provided a step[,] . . . bench[,] . . . [or] grab bar[] to support the code required

4

load conditions and the nominal loads from people entering or exiting the jacuzzi."

In his deposition, Sass reiterated the opinions in his report, although he admitted he had never been retained as an expert in a case involving a person falling while getting in or out of a bathtub or raising a safety issue concerning a bathroom towel bar. He acknowledged that the IPMC requires "plumbing fixtures" to "be capable of performing the function for which such plumbing fixtures are designed," and ultimately agreed the towel bar was designed with the purpose of holding towels and capable of functioning as a towel bar. He nevertheless maintained that he would have designed the towel bar to perform as a grab bar capable of supporting a person given its proximity to the jacuzzi. He did not cite any standard, rule, or regulation that required the installation of a grab bar for jacuzzi ingress and egress.

Sass also acknowledged there is "no code or standard to [his] knowledge about towel bars." He agreed that no specific industry standard or code had been violated regarding the jacuzzi's height and lack of steps or stairs, or by the towel bar's lack of "visual cues" or "warning[s]." Sass also conceded the towel bar did not cause plaintiff to lose her balance as plaintiff slipped before grabbing it.

A-1731-23

B.

In December 2023, defendant filed a motion to bar Sass's expert testimony and for summary judgment. Defendant argued that Sass's opinion should be barred as net opinion as it failed to cite any industry standard that required a grab bar to be installed near the tub or any code violation governing the placement or condition of the towel rack. Further, defendant highlighted that Sass "conceded at his deposition the . . . towel bar was only designed to hold towels" and "there is no industry code or standard regarding towel bars." Plaintiff countered that her theory was "the slipping was a result of not having some place to safely go into this . . . hazardous condition," but conceded there is "no code saying a grab bar has to be [in the jacuzzi]."

The court granted defendant's motion in its entirety. First, the court barred Sass's testimony. The court recognized Sass's report as the only aspect of the case that could arguably "create[] the question[] of fact" because the parties did not otherwise dispute the facts in the case. The court characterized "the towel bar [a]s a red herring" because (1) it was not intended to be a grab bar, and (2) Sass presented no "whys and wherefores" requiring the installation of a grab bar in this situation. The court further noted "[p]laintiff's counsel candidly

6

admitted . . . no code or rule or regulation . . . mandates that a grab bar be installed" to assist someone in getting in or out of the jacuzzi.

The court defined impermissible net opinion as a "corollary of N.J.R.E. 703, which 'forbids the admission into evidence of an expert's conclusions that are not supported by factual evidence or data,'" and "directs that 'experts [. . .] be able to identify the factual bases for their conclusions, explain their methodology, and demonstrate that both the factual bases and [the] methodology [. . .] are reliable.'" (quoting Landrigan v. Celotex Corp., 127 N.J. 404, 417 (1992)). The court then concluded "[Sass]'s expert testimony and his opinion with respect to the towel rack being a grab bar is an impermissible net opinion and . . . [cannot] be utilized to resist this motion for summary judgment."

According to the court, Sass's opinion that the bar "appear[ed] to be a grab bar" was "totally speculative, totally net [opinion] and . . . not reliable in any way." Further, there was "no question that . . . towel rack did not look like a grab bar, and specifically, on the day in question when the plaintiff fell, it wasn't a grab bar, it was a towel rack that literally had two towels hanging from it." The court stated Sass failed to provide any support for his opinion that the towel rack violated sections of the IBC and IPMC because "none of [the code provisions] he cite[d applied to] a towel bar." Further, the court found Sass did

7

not rely upon or cite any code, regulation, or industry standard indicating that a grab bar was necessary and required in this situation.

Thus, having deemed the Sass opinions inadmissible, the court then granted summary judgment finding that plaintiff could not meet the burden of proving defendant's negligence, as no evidence established defendant breached a duty owed to plaintiff.

Plaintiff appeals, alleging the trial court erred in deeming Sass's expert opinion to be inadmissible net opinion and failing to view the record in the light most favorable to plaintiff as "there remained a genuine issue of material fact as to whether the ingress to the jacuzzi constituted a hazardous condition."

II.

A.

A trial court must grant a summary judgment motion if "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." R. 4:46-2(c). "An issue of fact is genuine only if, considering the burden of persuasion at trial, the evidence submitted by the parties on the motion, together with all legitimate inferences therefrom favoring the non-

moving party, would require submission of the issue to the trier of fact." Ibid.; see also Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995). On appeal, we employ the same summary judgment standard and assess the trial court's summary judgment disposition de novo based upon an independent review of the motion record. See Townsend v. Pierre, 221 N.J. 36, 59 (2015). If there is no factual dispute, and only a legal issue to resolve, the standard of review is de novo and the trial court rulings "are not entitled to any special deference." Manalapan Realty v. Manalapan Twp. Comm., 140 N.J. 366, 378 (1995).

By contrast, we review a trial court's decision regarding the admissibility of expert evidence for an abuse of discretion. See Hisenaj v. Kuehner, 194 N.J. 6, 16 (2008). An abuse of discretion occurs when a trial judge's decision "was not premised upon consideration of all relevant factors, was based upon consideration of irrelevant or inappropriate factors, or amounts to a clear error in judgment." Masone v. Levine, 382 N.J. Super. 181, 193 (App. Div. 2005). When a summary judgment decision is linked to an evidentiary ruling, we first address the evidentiary issue. See Townsend, 221 N.J. at 53.

B.

Accordingly, we first consider plaintiff's challenge to the exclusion of the Sass report and testimony. "[E]xpert opinions are inadmissible if they constitute 'net opinions,' that is, opinions that constitute 'bare conclusions, unsupported by factual evidence.'" Funtown Pier Amusements, Inc. v. Biscayne Ice Cream & Asundries, Inc., 477 N.J. Super. 499, 516 (App. Div. 2024), certif. denied, 257 N.J. 408 (2024) (quoting Buckelew v. Grossbard, 87 N.J. 512, 524 (1981)). The doctrine barring expert "net opinion" excludes as inadmissible an expert's opinion if it is "'based merely on unfounded speculation and unquantified possibilities.'" Townsend, 221 N.J. at 55 (quoting Grzanka v. Pfeifer, 301 N.J. Super. 563, 580 (App. Div. 1997)). "[U]nsubstantiated expert testimony cannot provide to the factfinder the benefit that N.J.R.E. 702 envisions: a qualified specialist's reliable analysis of an issue 'beyond the ken of the average juror.'" Ibid. (quoting Polzo v. Cnty. of Essex, 196 N.J. 569, 582 (2008)). Additionally, "the failure of the expert to explain a causal connection between the act or incident complained of and the injury or damage allegedly resulting therefrom" is a fatal flaw that will bar an expert's opinion. Buckelew, 87 N.J. at 524. The expert must be able to identify an objective, generally accepted standard of practice that would allow the expert's opinion to be relied upon. See

Koruba v. Am. Honda Motor Co., 396 N.J. Super. 517, 526 (App. Div. 2007). Without this basic requirement, "[a]n opinion lacking in foundation is worthless." State v. One Marlin Rifle, 319 N.J. Super. 359, 370 (App. Div. 1999). Our Supreme Court has recognized the net opinion rule "is not a standard of perfection," Townsend, 221 N.J. at 54, and expert testimony should not be reduced to inadmissible net opinion "merely 'because it fails to account for some particular condition or fact,'" ibid. (quoting Creanga v. Jardal, 185 N.J. 345, 360 (2005)), or to give proper weight to a factor the adverse party thought important. So long as experts "otherwise offer[] sufficient reasons which logically support [their] opinion[s]," such omissions could be explored during cross-examination at trial. Id. at 54-55 (quoting Rosenberg v. Tavorath, 352 N.J. Super. 385, 402 (App. Div. 2002)).

Industry standards and regulatory codes are evidence of the proper standard of care although not necessarily conclusive authority. Davis v. Brickman Landscaping, Ltd., 219 N.J. 395, 411 (2014).

Applying these principles, we discern no abuse of discretion in the trial court's finding that Sass's proposed testimony was inadmissible net opinion consisting of his unsupported personal views. Although Sass cited to certain provisions of the IBC and IPMC to attempt to establish industry standards, and

11

therefore a duty owed to plaintiff and breach thereof, none applied to towel bars or imposed upon defendant a duty to place grab bars near the jacuzzi. The court properly found Sass's report and testimony devoid of any regulations applicable to towel bars or imposing the requirement that this bar should have been designed, installed, or maintained to support plaintiff after she independently slipped while entering the tub. We similarly concur that Sass's opinions that weight-bearing grab bars or visible warnings were required constituted his own personal views on safety untethered to any identifiable codes, rules, or regulations.

Plaintiff also contends the court failed to address her claim that the towel bar constituted a plumbing fixture maintained in an unsafe condition given its proximity to the jacuzzi. We disagree, as the court expressly found the bar was nothing other than "a towel rack [because it] literally had two towels hanging from it." As to the location of the towel bar, the court expressly concluded Sass impermissibly imposed his personal view that its placement near the tub required it to withstand the pressure of plaintiff's weight as she fell.

Therefore, given the absence of an objective industry standard or regulation regarding towel racks and the lack of any obligation to install a weight

12

bearing grab bar of any kind, the court did not misapply its discretion in barring Sass's testimony.

C.

Because we find the court did not err in barring Sass's opinions, we conclude that the trial court properly granted summary judgment in favor of defendant. Without such expert opinion, or any evidence that defendant breached a known duty of care causing plaintiff's injury, the record does not support plaintiff's negligence claim. The record contains no evidence of a duty owed to plaintiff related to the towel bar or breached by defendant in these circumstances. That the towel bar failed to support plaintiff after she slipped and began to fall forward before grabbing it for support does not render the condition dangerous or unsafe or impose a non-existent duty on defendant.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

13

A-1731-23