**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1099-23

LISA CHEW,

    Plaintiff-Appellant,

v.

ROBERT CHEW,

    Defendant-Respondent.

_____

Submitted May 5, 2025 – Decided June 17, 2025

Before Judges Sabatino and Berdote Byrne.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Gloucester County, Docket No. FM-08-0094-20.

Cockerill, Craig & Moore, LLC, attorneys for appellant (Christine C. Cockerill, on the briefs).

Smedley Law Group, PC, attorneys for respondent (AllynMarie Smedley, on the brief).

PER CURIAM

Plaintiff Lisa Chew appeals the Family Part's order denying her request to increase the alimony obligation of her former spouse, defendant Robert Chew, without discovery or a plenary hearing, and denying her request for counsel fees and costs. On appeal, she posits: (1) the trial court mistakenly held she did not demonstrate a prima facie claim of a substantial change in circumstances warranting discovery and a plenary hearing; (2) the current circumstances require her to use equitable distribution to cover her living expenses; and (3) the trial court erred in denying her application for counsel fees and costs.

Although the Family Part erred in holding plaintiff failed to establish a prima facie showing of changed circumstances, we affirm its order in part because the parties stipulated at the time of the divorce to their marital standard of living, and stipulated to plaintiff's imputed income, and she has not demonstrated she cannot earn any income. However, because plaintiff demonstrated a prima facie change in circumstances and the trial court failed to consider any Rule 5:3-5(c) factors in its denial of plaintiff's request for counsel fees, we reverse in part, and remand to the trial court for consideration of whether plaintiff is entitled to counsel fees.

2

I.

Plaintiff and defendant were married from September 1997 to February 2022, when the parties divorced. They had one daughter, who at the time of their divorce was emancipated. During their divorce litigation, the parties retained a joint expert who performed a lifestyle analysis and an economic benefit/cash flow analysis for defendant's business, which was subject to equitable distribution, Excel Industrial Services, LLC and Affiliates ("Excel"). The parties' Marital Settlement Agreement ("MSA") states defendant receives approximately $330,000 per year in economic benefits from Excel. The vocational expert, retained by defendant, imputed an annual earning capacity to plaintiff between $45,600 and $49,100, as she was not employed at the time of the parties' divorce, and had not been employed since May 2019. Defendant and plaintiff voluntarily agreed in their MSA that defendant would pay plaintiff $6,759 monthly in open duration alimony.

The parties' MSA addresses the termination and modification of alimony specifically. The MSA states:

> **D. Termination/Modification:** [Defendant's] alimony obligation shall terminate upon the earliest happening of the following events:
>
> a. death of [plaintiff];

A-1099-23

b. death of [defendant];

c. remarriage of [plaintiff];

d. [a]ny substantial change in circumstances warranting termination.

[Defendant's] alimony obligation shall be reviewable for modification or termination, as appropriate, based upon any substantial change in circumstances as provided for under [s]tatute or case law [sic], including [plaintiff's] cohabitation as defined at the time an application is made. The parties acknowledge that [plaintiff] has applied for Social Security Disability benefits. Her initial application was denied. [Plaintiff's] appeal is pending.

[(Emphasis added.)]

In addition, this is the rare case where the parties stipulated to an amount certain regarding the marital lifestyle. In the MSA, the parties agreed "[o]nce [the parties' boat and daughter's college] expenses were removed [because they were no longer incurring], the [m]arital [s]tandard of [l]iving was adjusted downward . . . to $19,000[] per month." The MSA specified neither party could maintain the marital standard of living, with plaintiff unable to do so with the amount of alimony she would be receiving from defendant, and defendant unable to maintain it while paying plaintiff alimony.

Article II of the MSA detailed the parties' agreement regarding equitable distribution. The parties agreed plaintiff would retain the former marital

4

residence, while defendant would retain the business interests and commercial properties of Excel. The MSA noted defendant owed plaintiff $780,220 in equitable distribution for her interest in Excel minus a credit for his share of the parties' former marital residence totaling $98,055.17. The parties agreed defendant would pay plaintiff $6,396.50 monthly in equitable distribution. The parties' MSA was incorporated into their final divorce judgment.

Shortly after entry of the MSA, in March 2022, plaintiff received a benefit verification letter from the Social Security Administration ("SSA") which stated it determined she had become disabled as of June 26, 2021, and she would begin to receive monthly disability benefits starting in December 2021. In February 2023, plaintiff received an SSA letter notifying her that her monthly social security payment would increase to $2,126 starting in December 2022.

On August 29, 2023, plaintiff filed a notice of motion to increase defendant's alimony obligation to $3,000 per week, $13,000 per month, based upon a substantial change in circumstances—the SSA determination that she was disabled and thus had a lower income than the imputed income stated in the MSA, and on the basis of defendant's alleged improved financial status. On October 12, 2023, defendant filed a cross-motion in which he opposed plaintiff's motion and, in the alternative, requested the trial court grant his request "to

5

obtain a new vocational evaluation for purposes of demonstrating [p]laintiff's ability to engage in substantial gainful activity up to the [SSA] limit," as well as additional requests for relief.

The trial court denied plaintiff's request to increase defendant's alimony obligation and her request for counsel fees, without discovery, finding plaintiff failed to demonstrate a prima facie case of changed circumstances. It also found defendant's request for a new vocational evaluation of plaintiff was moot. It specifically found the parties' MSA did not state that the result of plaintiff's disability benefits appeal would constitute changed circumstances, and thus held it was "not persuaded that the result of the appeal alone, without further analysis, represent[ed] a substantial change of circumstances." The court noted it would not add to the parties' MSA and, the "mere award or denial" of disability benefits itself did not "meet the burden of a substantial change in circumstances."

The trial court also addressed plaintiff's claim there was a change in circumstances based upon defendant's increase in income. It found that "[t]he purchase of a property is not sufficient to prove an increase in [d]efendant's income," because his new "heavily mortgaged property [did] not indicate a sudden influx of cash," and instead "indicate[d] to the court that the [d]efendant

6

continue[d] to consume a large portion of his resources as part of his own lifestyle choices." The court denied both parties' requests for counsel fees.

This appeal followed.

## II.

"Our review of Family Part orders is limited." Gormley v. Gormley, 462 N.J. Super. 433, 442 (App. Div. 2019). We "afford substantial deference to the Family Part's findings of fact because of that court's special expertise in family matters." Voynick v. Voynick, 481 N.J. Super. 207, 220-21 (App. Div. 2025) (quoting W.M. v. D.G., 467 N.J. Super. 216, 229 (App. Div. 2021)). A court's findings "are binding on appeal so long as its determinations are 'supported by adequate, substantial, credible evidence.'" Gormley, 462 N.J. Super. at 442 (quoting Cesare v. Cesare, 154 N.J. 394, 412 (1998)).

Generally, a Family Part's finding regarding the modification of alimony "should not be vacated unless the court clearly abused its discretion, failed to consider all of the controlling legal principles, made mistaken findings, or reached a conclusion that could not reasonably have been reached on sufficient credible evidence present in the record." J.E.V. v. K.V., 426 N.J. Super. 475, 485 (App. Div. 2012). "Although a family court's factual findings are entitled to considerable deference, we do not pay special deference to its interpretation

7

of the law . . . ." Thieme v. Aucoin-Thieme, 227 N.J. 269, 283 (2016) (quoting D.W. v. R.W., 212 N.J. 232, 245 (2012)).

N.J.S.A. 2A:34-23 grants Family Part judges the authority to modify alimony. "Our courts have interpreted [N.J.S.A. 2A:34-23] to require a party who seeks modification to prove 'changed circumstances[.]'" Spangenberg v. Kolakowski, 442 N.J. Super. 529, 536 (App. Div. 2015) (second alteration in original) (quoting Lepis v. Lepis, 83 N.J. 139, 157 (1980)); see also Temple v. Temple, 468 N.J. Super. 364, 367 (App. Div. 2021) (noting "the Court [has] recognized that an award may be modified or terminated when a moving party presents a prima facie showing of changed circumstances").

However, "[p]arties to a divorce action may enter into voluntary agreements governing the amount, terms, and duration of alimony, and such agreements are subject to judicial supervision and enforcement." Quinn v. Quinn, 225 N.J. 34, 48 (2016). A parties' agreement that is "executed voluntarily and understandingly for the purpose of settling the issue of [alimony] [is] specifically enforceable." Ibid. (quoting Berkowitz v. Berkowitz, 55 N.J. 564, 569 (1970)).

A-1099-23

Changed Circumstances

The MSA, under the section entitled "Termination/Modification," clearly states, "[t]he parties acknowledge that [plaintiff] has applied for Social Security Disability benefits," "[h]er initial application was denied," and her "appeal is pending." (Boldface omitted). Although the MSA could have been more clearly drafted, it is evident the parties were awaiting the outcome of the appeal to determine whether the SSA determination would change circumstances. There is no other reason for the inclusion of this language in the portion of the MSA discussing modification or termination. Plaintiff's disability determination—the SSA's finding that she was disabled and eligible to receive $2,126 per month starting in December 2022—was a "substantial change in circumstances" pursuant to the parties' MSA.

The parties' MSA imputed a yearly income of $45,600 to $49,100 to plaintiff. According to the SSA's disability determination of plaintiff, she now receives approximately $25,512 per year in disability benefits, which is a little more than half of the income imputed to her in the MSA.

Although the trial court erred in holding plaintiff failed to demonstrate a prima facie case of changed circumstances, she is not entitled to discovery or a plenary hearing. The parties clearly stipulated to the martial standard of living

as $19,000 per month for them as a couple, or approximately $9,500 each. Further, the parties acknowledged in their MSA that neither of them could maintain the marital standard of living. Plaintiff's decreased income does not warrant discovery or a plenary hearing because she is receiving $2,126 in disability benefits and $6,759 in alimony, or $8,885 in total, per month. The result of her SSA appeal did not change the marital standard of living or the fact that she is receiving half of the marital standard of living. Neither party has a greater right to the marital standard of living. N.J.S.A. 2A:34-23(b)(4).

Moreover, plaintiff has failed to demonstrate she cannot earn the additional $1,620 per month the SSA allows her to earn, despite its finding she is totally disabled.[1] Having been imputed an income between $45,600 and $49,100, a number she willingly agreed to before she filed her motion, and with knowledge her SSA appeal was pending, plaintiff would have to demonstrate she has diligently sought employment up to the SSA cap, or, in the alternative, establish she is permanently disabled to such an extent she cannot perform any employment up to the cap. Accordingly, we affirm the trial court's order

---

[1]  As of 2025, a disabled individual may earn up to $1,620 per month in additional income while receiving social security disability benefits after a trial work period. See Soc. Sec. Admin., Working While Disabled:  How We Can Help (Jan. 2025), https://www.ssa.gov/pubs/EN-05-10095.pdf.

A-1099-23

denying plaintiff's motion to increase defendant's alimony to $3,000 per week. Plaintiff is already receiving half of the marital standard of living in alimony and SSA payments, and she is not entitled to a greater share of the marital standard of living than defendant.

The Legislature has recognized an "increase or decrease in the supporting spouse's income," as changed circumstances warranting modification of alimony and support orders. Lepis, 83 N.J. at 151; see also N.J.S.A. 2A:34-23(k); Quinn, 225 N.J. at 49. Plaintiff argues defendant's alleged increase in income constitutes changed circumstances. She claims her "certified statements of his lifestyle and continued ability to entertain and travel," photos of his new house, and the publicly-recorded mortgage which reflects his $100,000 deposit support her claim. However, the trial court found "[t]he purchase of a property is not sufficient to prove an increase in [d]efendant's income," because his "heavily mortgaged property does not indicate a sudden influx of cash," and instead shows defendant's continued use of "a large portion of his resources as part of his own lifestyle choices." We agree. We conclude plaintiff failed to establish a prima facie showing of changed circumstances regarding an increase in defendant's income, particularly because the MSA included a stipulation as to the economic benefit derived from the business. Plaintiff did not offer any

evidence of defendant's increase in income and instead made bare assertions regarding the purchase of his new home, alleged hosting of guests, and alleged traveling as representing an increased income.

Counsel Fees

Although we affirm the Family Part's order denying plaintiff's motion to modify her alimony, we reverse and remand its denial of plaintiff's request for counsel fees and costs. The decision to award counsel fees "in matrimonial actions rests in the sound discretion of the trial court," Bisbing v. Bisbing, 468 N.J. Super. 112, 121 (App. Div. 2021), and will not be disturbed "absent a showing of 'an abuse of discretion involving a clear error in judgment,'" Steele v. Steele, 467 N.J. Super. 414, 444 (App. Div. 2021) (quoting Tannen v. Tannen, 416 N.J. Super. 248, 285 (App. Div. 2010), aff'd o.b., 208 N.J. 409 (2011)); see also R. 5:3-5(c). "An abuse of discretion occurs when a trial court makes 'findings inconsistent with or unsupported by competent evidence,' utilizes 'irrelevant or inappropriate factors,' or 'fail[s] to consider controlling legal principles.'" Steele, 467 N.J. Super. at 444 (alteration in original) (quoting Elrom v. Elrom, 439 N.J. Super. 424, 434 (App. Div. 2015)). Additionally, "[a]n abuse of discretion is also demonstrated if the court fails to consider 'all relevant

A-1099-23

factors.'" Ibid. (quoting Masone v. Levine, 382 N.J. Super. 181, 193 (App. Div. 2005)).

"Rule 4:42-9 permits an award of fees in a family action. Such fees may be awarded based on a weighing of the factors set forth in Rule 5:3-5(c) . . . ." Bisbing, 468 N.J. Super. at 121. "[T]he court shall determine the appropriate [counsel fee] award . . . [after] consider[ing] the factors set forth in [Rule 5:3-5(c)], the financial circumstances of the parties, and the good or bad faith of either party." N.J.S.A. 2A:34-23. In determining the amount of counsel fees to award, the court should consider the factors set forth in Rule 5:3-5(c), which include "the financial circumstances of the parties." See also Mani v. Mani, 183 N.J. 70, 93-95 (2005). We note that a party's ultimate success, or lack thereof, in a matter is only one of the factors a court considers in deciding the amount of attorneys' fees to award. R. 5:3-5(c). Thus, plaintiff's lack of success in her motion to increase the amount in alimony payments paid to her does not necessarily preclude the trial court from awarding her counsel fees.

Here, the trial court addressed both parties' requests for attorneys' fees by stating only: "[t]he court denies the requests of both parties for counsel fees." No further explanation or analysis was provided by the court. It failed to "consider the factors set forth in [Rule 5:3-5(c)], the financial circumstances of

13

the parties, and the good or bad faith of either party" in its decision to deny the parties' requests for counsel fees. N.J.S.A. 2A:34-23. Thus, we reverse the trial court's determination regarding attorneys' fees and remand for consideration of those factors.

Because plaintiff did demonstrate a prima facie case of changed circumstances and defendant's "[n]et economic benefit of approximately $330,000[] per year" is greater than plaintiff's imputed income and her overall financial circumstances, we remand to the trial court to consider the Rule 5:3-5(c) factors and determine whether plaintiff is entitled to reasonable attorneys' fees.

To the extent we have not addressed any of plaintiff's remaining arguments, we are satisfied they lack sufficient merit to warrant discussion. R. 2:11-3(e)(1)(E).

Affirmed in part, reversed in part, and remanded for the trial court's determination regarding counsel fees. We do not retain jurisdiction.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

M.C. Harley

Clerk of the Appellate Division

14                                                                                                    A-1099-23